No. 90-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

HAINES PIPELINE CONSTRUCTION, INC.,

                Plaintiff, Respondent and Cross-Appellant,

-vs-

MONTANA POWER COMPANY,

                Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

            Bruce R. Toole argued and Donald L. Harris argued;
            Crowley Law Firm, Billings, Montana

       For Respondent:

            Sam E. Haddon argued and Randy J. Cox argued; Boone,
            Karlberg & Haddon, Missoula, Montana

FILED

DEC 16 1991

Filed *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:   October 31, 1991

Decided:   December 16, 1991

_____
       Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a bench trial and judgment in the Second Judicial District Court, Silver Bow County. Defendant, Montana Power Company (MPC), appeals the judgment awarding Haines Pipeline Construction, Inc. (Haines), $502,361.26 in compensatory damages and $1,000,000 in punitive damages for MPC's breach of a construction contract to build a natural gas pipeline. Haines has cross-appealed the portion of the judgment failing to award Haines damages for its lost profits. Regarding the judgment for compensatory damages we affirm in part and reverse in part. As to the punitive damages we reverse and remand, granting the parties leave to amend their pleadings in light of our decision in Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767. In regards to the cross-appeal, we affirm the District Court's judgment denying Haines recovery for lost anticipated profits.

MPC raises the following issues on appeal:

I. Did the District Court err by admitting into evidence MPC's internal audit regarding its construction contract with Haines?

II. Did the District Court err in concluding that MPC, rather than Haines, was liable for breach of the construction contract?

III. Did the District Court err in awarding Haines compensatory damages including $16,000 in travel expenses and $50,000 in unspecified general damages?

IV. Did the District Court err in awarding punitive damages for breach of the implied covenant of good faith and fair dealing?

Haines raises the following issue on cross-appeal:

2

V. Did the District Court err in failing to award Haines damages for its lost profits?

On June 16, 1983, Haines as contractor and MPC as owner, entered into a written contract for the construction of the southern half of a 16 inch natural gas pipeline from Warm Springs to Cut Bank, Montana. Walter Kelley, MPC's chief operating officer and a director, was MPC's agent responsible for administration of the contract.

In lieu of a construction bond, the parties required Haines to post an irrevocable letter of credit for $750,000 in favor of MPC, and to maintain such letter of credit until final acceptance and payment of the work under the contract. The terms for drawing on the letter of credit were as follows:

> "We hereby certify that Haines Pipeline Construction, Inc. has failed to comply fully with the terms of our contract, dated June 18, 1983 covering their laying of the 200 mile 16 inch pipeline between Warm Springs and Cutbank. We are therefore entitled to this drawing of $_____."

The original expiration date of the letter of credit was January 15, 1984.

Construction of the pipeline required welding sections of pipe in accordance with procedures developed by MPC and in compliance with federal regulations. MPC entered into a contract with Gamma Sonics (Gamma), to provide x-ray inspection of the welds made by Haines. Welds identified by Gamma as insufficient were immediately marked and repaired by Haines. No welds were buried unless they had been x-ray inspected and approved by Gamma and MPC inspectors.

The project had regulatory problems brought to the attention

3

of the Montana Public Service Commission (PSC) by labor leaders and the Department of Transportation. Hearings were held on several alleged federal safety violations, regarding primarily the padding of the bed underneath the pipeline. At the time of the hearings, MPC declined to hold Haines harmless for these violations although Kelley testified that MPC accepted responsibility and paid costs for padding the pipeline. To avoid further hearings MPC developed a "plan to demonstrate fitness for service" of the portion of the pipeline that had been constructed and agreed to postpone further construction.

On April 16, 1984, the letter of credit which was previously extended, was reduced to $250,000 and the expiration date extended again, by agreement of the parties, from July 15, 1984, to November 15, 1984. On April 23, 1984, the construction contract having been suspended pursuant to the fitness plan, MPC entered a settlement agreement with Haines covering all work done to that date. As part of that agreement, Haines would release all claims against MPC.

MPC hired Southwest Research Institute (SRI) to re-check the x-ray inspection of Gamma. On May 8, 1984, Haines and MPC entered into a second contract whereby Haines was to assist MPC in doing miscellaneous repair work on the completed portion of pipeline including repair of buried pipeline identified by SRI as defective. Under the contract Haines was paid as an independent contractor on an hourly basis.

On October 15, 1984, MPC Chief Executive Officer, Paul Schmechel, distributed a memorandum in response to the board of directors' concerns about the pipeline. The memorandum indicated

4

that MPC would "move Haines off the job" by mid-November. Furthermore, the memorandum indicated that the letter of credit was set to expire on November 15 and that the circumstances surrounding repair work were being reviewed to determine if claims should be made against Haines. Lastly, the memo noted that hydrostatic testing of the south half of the pipeline had been completed without failure.

On October 22, 1984, Haines as a "good faith gesture" extended the letter of credit until May 15, 1985, at the request of MPC. On November 16, 1984, MPC terminated the June 1983 contract with Haines, pursuant to paragraph 31.0, allowing MPC to terminate at its convenience, and setting forth the amounts which Haines could recover upon such termination. Paragraph 31.0(c)(iii) of the contract specifically stated "the Contractor shall make no claim for lost anticipated profits." The reason given by MPC for the termination was "severe cash problems."

MPC conducted an internal audit of the pipeline construction. The audit focused on the shortcomings of MPC's supervision of Haines and Gamma. One of the recommendations of the audit was to proceed against Gamma for the cost of digging up the pipeline and making the necessary repairs. It was later determined that Gamma had insufficient assets to pursue.

In January of 1985, MPC retained a law firm to advise the company if it had a claim against Haines for the cost of fixing defective welds. MPC did not provide the firm with the audit report nor did they make Chief Operating Officer Kelley available to the firm. MPC received an opinion letter from the law firm on

5

May 10, 1985, advising MPC that it could assert both contractual and negligence claims against Haines to recover the costs MPC would incur in repairing defective welds.

Subsequently, MPC attorney, Robert Gannon, recommended to MPC's vice chairman, Jack Burke, that MPC draw upon the $250,000 letter of credit which was due to expire Wednesday, May 15. Gannon concluded that the costs of repairing the welds would substantially exceed the value of letter of credit. On Tuesday, May 14, Gannon and Burke met with MPC's CEO, Paul Schmechel, to obtain authority to draw upon the letter of credit.

On May 15, 1985, MPC drew upon the letter of credit after informing Haines that it had failed to perform proper welding under the contract. Haines responded stating that it had no further responsibility for the welds once they had been x-rayed, approved, and the pipe buried.

Haines initiated this action to recover damages against MPC for breach of the construction contract. MPC answered and counterclaimed for damages alleging defective work. After a bench trial in February 1989, the court entered its findings of fact and conclusions of law on May 3, 1990, and entered judgment in favor of Haines on May 21, 1990. Among its findings and conclusions, the court held that MPC had accepted Haines's work, had no authority to draw upon the letter of credit and that presentment of the letter of credit constituted a breach of the construction contract. Furthermore, the court concluded that MPC mislead Haines into extending the letter of credit constituting a breach of the implied covenant of good faith and fair dealing. Finally, the court

6

concluded that the breach was oppressive conduct justifying the imposition of punitive damages. From this order MPC appeals.

I.

Did the District Court err by admitting into evidence MPC's internal audit regarding its construction contract with Haines?

MPC contends that the District Court erred in admitting MPC's internal audit into evidence. Several theories are offered. First MPC argues that the audit is hearsay and is not within any hearsay exception. They further argue that the audit is hearsay within hearsay, as it was written by one MPC employee from information gathered by other individuals. Lastly, MPC argues that the probative value of the audit is outweighed by the prejudice MPC experienced due to its admission. Haines asserts that the audit is admissible because it is relevant, and that the audit is not hearsay because it is both a prior inconsistent statement and an admission by a party opponent.

Having heard these arguments the court admitted the audit into evidence. Admission of evidence is a discretionary act by a trial court. The function of this Court in determining if a court properly admitted evidence is to determine if the trial court misused or abused its discretion. See Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

MPC notes that traditionally a report from an agent to its principal, intended to be confidential, was not an admission, and that commentators disagree whether such reports are admissible under the rules. See 4 Weinstein's Evidence, ¶ 801-266, et seq. (1988). MPC further notes that with the exception of Runkle v.

7

Burlington Northern (1980), 188 Mont. 286, 613 P.2d 982, this Court has not addressed the admissibility of an intracorporate document as an admission. MPC argues that Runkle is not dispositive. Specifically, MPC characterizes the language in Runkle referring to the admissibility of intracorporate memorandum as a "throwaway conclusion". We disagree and find Runkle to be dispositive.

In Runkle, this Court specifically held that intracorporate communications concerning matters relevant to the issue of the case should have been admitted into evidence as an admission pursuant to Rule 801(d)(2), M.R.Evid. Runkle was a negligence action in which a memorandum was offered to demonstrate the railroad's knowledge of a hazardous crossing condition and the railroad's intent with respect to the same. MPC argues that the audit in the instant case is a retrospective study of past events and is therefore distinguishable from the consideration of the future act of installing a railroad crossing signal as in Runkle.

One of the purposes of the internal audit was to determine possible company exposures of any type. Such determination clearly requires retrospective analysis as argued by MPC; however, it is equally clear that another purpose of the audit was to aide MPC in the development of future plans. Similar to the memorandum in Runkle, the audit report was in response to a problem the company was experiencing and provided recommendations for future actions. MPC essentially argues that the audit reflects the opinion of the reporter and that a principal providing authority to an agent to investigate a topic, should not be bound by the findings of the agent.

The internal audit is relevant to the case because it is part of the information Schmechel had available when he ordered that the letter of credit be presented. We are not saying that MPC is committed to accept the audit's conclusions as MPC suggests. Instead, consistent with our finding in Runkle, we find that the internal audit is admissible as an admission because it is relevant to the issue being resolved by the trial court. Schmechel had the opportunity to weigh the audit along with the opinion letter to make a considered decision as to what course of action MPC should take. The District Court should be afforded the same opportunity.

MPC cannot claim unfair prejudice simply because admission of the audit was adverse to its position. It was within the District Court's discretion to determine if the prejudice was unfair; it was also in the court's discretion, as trier of fact, to assign the audit the weight the court deemed appropriate. When a trial court determines that the prejudicial effect of evidence does not outweigh its probative value, pursuant to Rule 403, M.R. Evid.; that determination is in the province of the trial court and will not be disturbed absent abuse. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Because we find no abuse of court discretion the decision of the court to admit the internal audit into evidence is affirmed.

## II.

Did the District Court err in concluding that MPC, rather than Haines, was liable for breach of the construction contract?

The District Court found that MPC breached its contractual obligations to Haines when they drew on the letter of credit.

9

Specifically, the court found breaches of the implied warranty of good faith and fair dealing and the implied warranties of transfer and presentment. The District Court concluded that MPC waived its right to enforce the specific terms of the contract, that the pipeline contract had been amended by performance and oral agreement and that MPC did in fact accept the work of Haines. Because the welds were accepted, MPC had no right to recover against Haines for the welds. Therefore, the District Court ruled that MPC had no authority to draw on the letter of credit and in so doing breached its obligation towards Haines.

MPC contends the District Court erred in ruling that MPC breached the contract when allegedly Haines breached the contract by defectively welding the pipeline. MPC argues that the contract expressly holds Haines responsible for constructing the pipeline to meet federal standards that were not met. MPC denies ever accepting the defective welds suggesting to do so would be absurd. Furthermore, MPC alleges the District Court erred by allowing parol evidence to modify the terms of the written contact.

Whether the contract was administered as written and the determination of whether there is a breach of the contract are questions of fact to be determined by the trial court. The findings of a trial court in a non-jury trial will not be overruled unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.

Section 28-2-1602, MCA, states:

A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise.

10

An oral agreement modifying a written agreement is executed when its terms have been fully performed. Lemley v. Allen (1983), 203 Mont. 37, 659 P.2d 262.

The testimony of Walter Kelly establishes not only that it was standard practice to vary from the letter of the contract but also as the number one MPC man on the project he altered the terms of the contract on behalf of MPC on several occasions. When asked what role the written contract played in the administration of the contract and the construction project, Kelly testified:

> Well, the contract is a point of beginning. You've got to start someplace, as we do on any job. And then you negotiate on a daily basis and do the job.

In addition, Brad Haines, president of Haines Pipeline, testified to instances when changes in the contract were made that were not committed to writing.

Substantial evidence exists to support the District Court's finding that the pipeline contract was amended by performance and oral agreement of the parties. Furthermore, when a written contract is altered or modified by an executed oral agreement, parol evidence of the alteration or modification can be heard. Jensen v. Olson (1964), 144 Mont. 224, 395 P.2d 465.

The District Court ruled and we agree that MPC waived or modified contract provisions regarding inspection and acceptance of Haines' work and did in fact accept the welds prior to Haines burying them in the ground. Waiver and acceptance of the welds was determined on the basis of Kelly's testimony that he did accept Haines' work; the second contract whereby MPC hired and paid Haines

to make repairs to the pipeline; and the standard business practice.

MPC argues that the contract expressly provides inspection of the work by MPC shall not constitute nor imply acceptance by MPC, and that this provision prevails over any industry standard to the contrary. MPC further contends the District Court erred in concluding that MPC waived its rights under the inspection clause by failing to demand Haines repair the welds and then paying Haines to repair welds under a separate repair contract. MPC argues that a waiver can occur only when the party clearly manifests such an intention and it never had any intention of the sort.

The District Court's findings are supported by the testimony of Walter Kelly, who was in a position to accept Haines' work on behalf of MPC and did in fact accept it. That it is standard practice to accept the welds prior to their burial is substantiated by the testimony of B.G. Simpson, an expert in the field. It is undisputed that MPC entered a second contract with Haines and paid Haines to repair faulty welds.

Waiver may be proven by express declarations or by a course of acts and conduct so to induce the belief that the intention or purpose was to waive. Northwestern Fire and Marine Insurance v. Pollard (1925), 74 Mont. 142, 238 P.2d 594. Mathis v. Daines (1982), 196 Mont. 252, 639 P.2d 503. In the instant case, waiver is supported by both the express declarations of Kelly and by MPC's entering the second contract. Paying Haines to repair buried welds is indicative of MPC assuming responsibility for the buried welds and constitutes waiver of contract provisions to the contrary.

12

The District Court's findings that the contract was not administered as written and that MPC accepted the welds and waived the contract provision holding Haines responsible for repair costs is not clearly erroneous and is therefore affirmed.

Presentment of the letter of credit warranted that Haines had not fully complied with the terms of the contract. Because Haines had not breached the contract, the District Court concluded that MPC's presentment of the letter of credit breached warranties of presentment attendant to letters of credit and the implied warranty of good faith and fair dealing.

Section 30-5-111, MCA, provides that by demanding payment, a party warrants that the necessary conditions prior to presentment of the credit have been met. In this case, MPC was required to certify that Haines had failed to comply with the terms of the contract. The District Court having found that Haines had complied with the contract, as modified by Walter Kelly for MPC, determined the necessary conditions were not met prior to MPC's presentment of the letter of credit. Therefore, the court ruled that MPC breached the warranty of presentment, entitling Haines to compensatory damages. Furthermore, the court found that MPC's conduct breached the implied warranty of good faith and fair dealing.

The District Court's conclusion that MPC breached the construction contract entitling Haines to compensatory damages is supported by substantial evidence, is not clearly erroneous and therefore is affirmed.

III.

Did the District Court err in awarding Haines compensatory damages including $16,000 in travel expenses and $50,000 in unspecified general damages?

In its judgment, entered, May 21, 1990, the District Court awarded compensatory damages to Haines in the amount of $502,361.26. Determination of the actual damages suffered Haines as a result of MPC's breach is a question of fact to be determined by the trial court. These findings will not be disturbed unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.

MPC contends that the District Court erred in awarding Haines $16,000 for travel expenses. The District Court awarded Haines $16,000 for travel expenses that were subsequent to, and determined to be a result of, MPC's presentment of the letter of credit. Haines provided an explanation of these expenses which was accepted by the court. The award of the $16,000 for travel expenses is not clearly erroneous and therefore is affirmed.

In addition, MPC contends the $50,000 award for "General Damages to include interest paid by Haines to keep the letter of credit valid" is not supported by the evidence. Haines argues that the record does substantiate the general damage award because damages are not to be denied even if mathematical precision is challenged, provided the evidence is sufficient to afford a reasonable basis for determining the specific amount awarded. See Cremer v. Cremer Rodeo Land and Livestock Co. (1981), 192 Mont. 208, 627 P.2d 1199. Thus, Haines contends that the testimony regarding damages, which included over $118,000 in additional

14

damages above those specifically awarded by the court, supports the award.

The court indicated that the general damages award included interest paid by Haines to keep the letter of credit valid. MPC argues that it in fact paid the expenses associated with keeping the letter of credit valid and point to the testimony of Brad Haines to support this claim. The record makes clear that MPC paid the service charges necessary to maintain and extend the letter of credit, but not interest rates.

It appears the court is referring to the interest paid by Haines to an individual who guaranteed the letter of credit and following MPC's presentment was required to pay the bank the $250,000. The court awarded Haines interest on the $250,000 from the time of the presentment of the letter of credit. The interest award of $125,000 is more than enough for Haines to pay the interest debt. We find no other basis for the award of general damages. Therefore, the $50,000 award for general damages is not allowed and the judgment of the District Court on this point is reversed.

IV.

Did the District Court err in awarding punitive damages for breach of the implied covenant of good faith and fair dealing?

The legislature has defined the implied covenant of good faith and fair dealing as:

> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. §28-1-211, MCA. See also § 30-2-103(b), MCA.

15

The District Court awarded Haines $1,000,000 in punitive damages for MPC's breach of the implied covenant of good faith and fair dealing. The court concluded that:

> The actions of MPC in drawing on the letter of credit constituted a tortious breach of the obligation of good faith and fair dealing in the contract, and was oppressive. Conclusion of law number 4.

and

> The willful conduct of MPC in enticing Haines Pipeline into renewals of the letter of credit when, in fact, all MPC was trying to do was gain time to be in a position to draw on the letter of credit when it already had determined that it was going to "move Haines off the job" and re-bid the northern section and to preclude Haines from building the remaining portion of the pipeline for its own purposes constitutes a breach of the obligation of good faith and fair dealing implied in all contracts between the parties and was oppressive conduct. That breach caused damages to Haines Pipeline and justifies the imposition of punitive damages. Conclusion of law number 9.

On May 9, 1990, this Court handed down an opinion clarifying the application of the implied warranty of good faith and fair dealing in contract cases. Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767. We held that every contract, regardless of type, contains an implied covenant of good faith and fair dealing and that a breach of the covenant is a breach of the contract. Story, 791 P.2d at 775. However, we further held that while a breach of the covenant entitles a party to contract damages, an award of tort damages is limited and allowed only in special circumstances which are not present here.

Until the Story decision was handed down the applicable rule of law for determining a tortious breach of contract entitling an award of punitive damages was whether the breach was arbitrary,

16

capricious, or unreasonable given the justifiable expectations of the parties in light of their contract. Nicholson v. United Pacific Insurance Co. (1985), 219 Mont. 32, 710 P.2d 1342. Both parties relied on the 'justifiable expectations' standard of Nicholson when presenting their case to the lower court.

The broad general rule is that "A change in the law between a nisi prius (prior law applied in the trial court) and an appellate decision requires the appellate court to apply the changed law." Thorpe v. Housing Authority of the City of Durham (1969), 393 U.S. 268, citing Ziffrin, Inc. v. U.S. (1943), 318 U.S. 73. This Court, citing Thorpe, has provided that "Generally, an appellate court must apply the law in effect at the time it renders its decision." Lee v. Flathead County (1985), 217 Mont. 370, 704 P.2d 1060.

An exception to the established rule is that it will not be applied when necessary to prevent "manifest injustice." Thorpe at 282, citing Greene v. U.S. (1964), 376 U.S. 149. In Montana, manifest injustice can be defined as occurring when application of the new law impairs a vested right. See Western Montana v. Board of Health and Environmental Sciences (1985), 217 Mont. 178, 703 P.2d 850. However, "No one has a vested right to any rule of common law." Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 776 P.2d 488. Furthermore, judgment is not a vested right while it is subject to review or while an appeal is pending. See 46 Am.Jur.2d, 466. Therefore, Haines has no vested right in the application of the pre-Story (Nicholson) criteria for awarding punitive damages in a breach of the duty of good faith and fair dealing. The law of Story is dispositive of the instant case.

17

There is no dispute that the parties do not meet the special criteria of Story; therefore, Haines is not entitled to its award of punitive damages for MPC's breach of the construction contract. However, it is clear and we reiterate that Story does not preclude the award of actual damages. Under Story, a breach of the implied covenant gives rise to contract damages only, unless special relationship exists.

Haines argues that Story still allows tort type damages in traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with contract. Furthermore Haines argues, the court's findings of oppression and presumed malice justify the imposition of punitive damages because they are findings of tort damages independent of the contract damages disallowed by Story.

We disagree. 'Oppression' and 'malice' do not constitute torts; instead, they are adjectives used to characterize particular conduct. In the past, the legislature used these adjectives to characterize the type of conduct in which exemplary damages were allowed. Section 27-1-221, MCA (1985). However, before exemplary damages can be awarded, a tortious act must first be independently established. The District Court used these adjectives in the instant case to characterize MPC's conduct in breaching the contract, not as an independently established tort. Story makes clear that exemplary damages will not be allowed for breach of contract alone.

Section 27-1-220, MCA, clearly says exemplary damages are not allowed for a breach of contract unless otherwise expressly

18

provided by statute. <u>Story</u> further clarifies that the breach of the implied covenant of good faith and fair dealing constitutes breach of contract and not a tort.

> Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, <u>the contract is breached.</u> <u>Story</u>, 791 P.2d at 775. (Emphasis added.)

The basis of the District Court's award of punitive damages is in its finding that MPC wrongfully induced Haines into extending the letter of credit, conduct the court described as oppressive. While it is clear that oppression and presumed malice are not separate contract-related torts, a question exists whether or not a tort such as fraud was committed, which would give rise to tort damages under <u>Story</u>. The District Court awarded punitive damages because in its judgment it felt that MPC's misconduct rose to a level deserving of punishment. However, the law has changed. Under the law of <u>Nicholson</u> the manner in which the court imposed judgment may have been proper; however, under the controlling law of <u>Story</u> it clearly is not.

Haines relied on the law as it stood prior to our ruling in <u>Story</u> and developed its strategy in accordance. Just as MPC's pleading and trial briefs were void of reference to <u>Story</u> in the lower court; Haines pleading and trial briefs were void of explicit references to alternative tort claims that may have been appropriate. However, both parties throughout the proceedings

19

addressed the appropriateness of punitive damages and whether MPC's conduct rose to a level allowing their imposition.

We have held that a plaintiff has the right to try a case on the supposition that a rule announced in a prior case would be adhered to. Broderick v. Stevenson Consolidated Oil Co. (1930), 88 Mont. 34, 290 Pac. 244. In Broderick, the decision of the district court was correct on basis of the law as it existed at the time of trial but erroneous after the case on which it relied was expressly overruled. In reliance on the old law, plaintiff failed to introduce evidence that may have enabled her to prevail under the newly established law. Under the circumstances, the cause was remanded for a new trial to afford the plaintiff opportunity to make proof of her allegations. When there is an intervening case, remand is proper for reconsideration in light of the appellate court's new decision. Gibson v. Berryhill, Alabama (1973), 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488.

In Broderick, the plaintiff initially plead the cause of action for which it was allowed to pursue on remand. Ordinarily, when a party is unsuccessful in trying a case on one theory, a new trial will not be granted to allow trying the case on an alternative theory. However, we cannot expect an attorney to foresee that the contemporaneous causes of action available to his client will be overturned by the appellate court subsequent to the trial. When Haines complaint was filed, Haines relied on law allowing courts to award punitive damages for the contract breach of the implied warranty of good faith and fair dealing.

When an appellate court reverses and remands for new trial, the appellate court may, in the furtherance of justice, grant leave to the parties to amend their pleadings. See 5B C.J.S. 468, §1936 Appeal and Error. Where issues are 'inextricably intertwined', the pleadings may be amended on remand. O'Malley v. Casey (1979) 589 P.2d 1388. The issues of fraud and the breach of the covenant of good faith and fair dealing as applied in this case are inextricably intertwined.

In light of the Story decision and its applicability to the present case we reverse and remand this case on the issue of punitive damges for further proceedings in conformance with this opinion. Furthermore, in the furtherance of justice, we grant leave to the parties to amend their pleadings to allege fraud or other theories of recovery or defense consistent with this opinion.

V.

Did the District Court err in failing to award Haines damages for its lost profits?

Haines contends that the District Court's sole error was its failure to award Haines damages for lost profits. Haines argues that the court's conclusion that MPC's breach "deprived [Haines] of the benefit of its bargain" is inconsistent with its denial of damages for lost profits, which Haines allegedly proved to be in excess of $1 million. Haines argues that it had at the very least an implied contract with MPC to build the northern half of the pipeline based on representations made to it by Kelly. Thus, it is entitled to its lost profits for MPC's breach of this contract or

21

at least a remand of the case to determine the extent of such damages.

The District Court found that "Haines had no contractual assurance that it would build the north half of the pipeline." The contract was terminated by MPC on September 16, 1984, pursuant to paragraph 31.0 of the contract which provides in part that:

> Should conditions arise which, in the opinion of Owner, make it advisable to cease work under this Contract, Owner may terminate this Contract by written notice to Contractor.

Paragraph 31.0(c)(iii) includes; "The Contractor shall make no claim for lost anticipated profits." Walter Kelly provided Haines with a letter that indicated MPC was terminating the contract for its convenience. The reason for the termination was cited as economically based and not performance related.

The evidence supports the court's finding that MPC was not obligated to Haines for the construction of the north loop of the pipeline. It appears that paragraph 31.0 was properly invoked. There is no evidence offered to demonstrate that the termination clause was ever modified or amended in any way. The clause clearly states that there will be no claims for lost anticipated profits. The finding of the District Court denying Haines recovery of lost anticipated profits is affirmed.

Affirmed, reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

22

_John Conway Harrison_

_William E. Hunt Sr._

_Terry N. Trieweiler_

_____
                Justices

_Henry Loble_

Retired District Court Judge
Henry Loble sitting for Justice
Karla M. Gray.

Justice Terry N. Trieweiler dissenting in part and concurring in part.

I would not follow *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767. The tort law of bad faith evolved through careful reasoning and long experience to take the profit out of dishonest and oppressive business practices. *Story* returned that profit for those in superior bargaining positions.

Every consumer and small businessman and woman in Montana are worse off because of *Story*.

Therefore, I would affirm the judgment of the District Court.

Other than the majority's reversal of the judgment for punitive damages based on *Story*, I concur in the majority opinion.

_____
Justice

24