No. 93-416

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

HAINES PIPELINE CONSTRUCTION, INC.

    Plaintiff/Appellant,

-v-

MONTANA POWER COMPANY,

    Defendant/Respondent.



FILED

JUN 2 0 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Randy J. Cox & Sam E. Haddon, Boone, Karlberg &
        Haddon, Missoula, Montana

    For Respondent:

        Bruce R. Toole & Donald L. Harris, Crowley, Haughey,
        Hanson, Toole & Dietrich, Billings, Montana

Submitted on Briefs:  April 7, 1994

Decided:  June 20, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Haines Pipeline Construction, Inc., (Haines) appeals from a judgment entered on August 9, 1993, in favor of Montana Power Company (MPC) and against Haines on all claims set forth in its Third Amended Complaint. The District Court, Second Judicial District, Silver Bow County determined that Haines had failed to prove fraud or constructive fraud which would entitle Haines to recover any damages, either actual or punitive. We reverse and remand.

We state the issues on appeal as follows:

(1) Did the District Court err in refusing to apply findings of fact and conclusions of law issued by the District Court in Haines I and affirmed on appeal to determine if Haines was entitled to summary judgment?

(2) Did the District Court err in holding a de novo trial after which it issued findings of fact and conclusions of law contrary to the findings and conclusions affirmed on appeal from Haines I?

This same case was before us on appeal in Haines Pipeline Constr. v. Montana Power (1991), 251 Mont. 422, 830 P.2d 1230 (hereinafter Haines I), where Haines sued MPC for bad faith and breach of contract. The underlying facts giving rise to the cause of action are set forth in Haines I, and, as necessary to the determination of this case, are restated here.

In June 1983, Haines and MPC entered into a written contract for the construction of a 16 inch natural gas pipeline from Warm

2

Springs to Cut Bank, Montana. In lieu of a construction bond, the parties required Haines to post an irrevocable letter of credit in the amount of $750,000 in favor of MPC, and to maintain such letter of credit until final acceptance and payment of the work under the contract.

Construction of the pipeline required that Haines weld sections of the pipe in accordance with procedures developed by MPC and in compliance with federal regulations. No welds were buried unless they had been inspected and approved by MPC and Gamma Sonics (Gamma), a company hired by MPC to provide X-ray inspection of the welds.

The project had regulatory problems which were brought to the attention of the Montana Public Service Commission (PSC) by labor leaders and the Department of Transportation. Hearings were held on several alleged federal safety violations, regarding primarily the padding of the bed underneath the pipeline. To avoid further hearings, MPC developed a "plan to demonstrate fitness for service" of the portion of the pipeline that had been constructed and agreed to postpone further construction.

On April 16, 1984, the letter of credit was reduced to $250,000 and the parties agreed to extend the expiration date to November 15, 1984. On April 23, 1984, the construction contract having been suspended pursuant to the fitness plan, the parties entered into a settlement agreement covering all work done to that date.

MPC hired Southwest Research Institute (SRI) to re-check the

3

X-ray inspection of Gamma. Haines and MPC entered into a second contract on May 8, 1984, whereby Haines was to assist MPC in doing miscellaneous repair work on the completed portion of pipeline including repair of buried pipeline identified by SRI as defective. Under this contract Haines was paid as an independent contractor on an hourly basis.

On October 15, 1984, MPC Chief Executive Officer, Paul Schmechel, distributed a memorandum in response to the board of directors' concerns about the pipeline. The memorandum indicated that MPC would "move Haines off the job" by mid-November. Furthermore, the memorandum indicated that the letter of credit was set to expire on November 15, and that the circumstances surrounding repair work were being reviewed to determine if claims should be made against Haines.

On October 22, 1984, Haines as a "good faith gesture" extended the letter of credit until May 15, 1985, at the request of MPC. On November 16, 1984, MPC terminated the June 1983 contract with Haines, pursuant to paragraph 31.0, allowing MPC to terminate at its convenience.

MPC conducted an internal audit of the pipeline construction. The audit focused on the shortcomings of MPC's supervision of Haines and Gamma. One of the recommendations of the audit was to proceed against Gamma for the cost of digging up the pipeline and making the necessary repairs. It was later determined that Gamma had insufficient assets to pursue.

In January of 1985, MPC retained a law firm to advise the

4

company if it had a claim against Haines for the cost of fixing defective welds. MPC did not provide the firm with the audit report. MPC received an opinion letter from the law firm on May 10, 1985, advising MPC that it could assert both contractual and negligence claims against Haines to recover the costs MPC would incur in repairing the defective welds.

Subsequently, MPC attorney, Robert Gannon, recommended to MPC's vice chairman, Jack Burke, that MPC draw upon the $250,000 letter of credit which was due to expire Wednesday, May 15. Gannon concluded that the costs of repairing the welds would substantially exceed the value of the letter of credit. On Tuesday, May 14, Gannon and Burke met with MPC's CEO, Paul Schmechel, to obtain authority to draw upon the letter of credit.

On May 15, 1985, MPC drew upon the letter of credit after informing Haines that it had failed to perform proper welding under the contract. Haines responded stating that it had no further responsibility for the welds once they had been X-rayed, approved, and the pipe buried.

Haines initiated an action in the Second Judicial District Court, Silver Bow County to recover damages against MPC for breach of the construction contract. After a bench trial the District Court entered its findings and conclusions. The court ruled that MPC had accepted Haines' work, had no authority to draw upon the letter of credit and that presentment of the letter of credit constituted a breach of the construction contract. Furthermore, the District Court concluded that MPC misled Haines into extending

5

the letter of credit constituting a breach of the implied covenant of good faith and fair dealing. Finally, the court concluded that the breach was oppressive conduct justifying the imposition of punitive damages.

MPC appealed the District Court's judgment awarding Haines compensatory and punitive damages. Regarding the compensatory damages, we affirmed in part and reversed in part. As to the punitive damages, we reversed and remanded, granting the parties leave to amend their pleadings. We remanded the award of punitive damages, because of the intervening change of law in Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767, which eliminated the award of tort damages for breach of the covenant of good faith and fair dealing, absent a special relationship. We allowed the parties to amend their pleadings to allege fraud, or other theories consistent with our decision in Haines I.

Following the remand (hereinafter Haines II), MPC substituted Judge Olson, the District Court judge who had tried Haines I. Haines filed a Third Amended Complaint alleging fraud and constructive fraud. Haines moved for summary judgment based upon the findings and conclusions of the District Court in Haines I, affirmed by this Court, that MPC wrongfully enticed Haines into extending the letter of credit. The District Court in Haines II, denied the motion and stated in its memorandum that:

> It is noted that Judge Thomas Olson's Findings and Conclusions were based upon evidence produced in support of the Second Amended Complaint. The District Court found for Plaintiff and the Supreme Court affirmed there was a Breach of the Covenant of Good Faith and Fair Dealing and consequently a Breach of the Contract. The

6

Findings and Conclusions of Judge Olson are the law of
<u>that</u> case. (Emphasis added.)

The District Court went on to state,

this Court feels that this matter should be tried **de novo**
to determine if Fraud or Constructive Fraud did in fact
exist. (Emphasis in original.)

The District Court retried the case and found that Haines had failed to prove either actual or constructive fraud. In doing so, the District Court made findings directly contrary to the findings of fact and conclusions of law in Haines I, which were affirmed by this Court. On August 9, 1993, judgment was entered in favor of MPC and against Haines on all claims set forth in its Third Amended Complaint. Haines appeals from this judgment.

Haines contends that the District Court failed to properly apply the doctrines of collateral estoppel and law of the case when it made findings which were directly contrary to the findings in Haines I. We address each doctrine in turn.

## I. COLLATERAL ESTOPPEL

The doctrine of collateral estoppel is similar to the doctrine of res judicata. The doctrines differ in that res judicata bars the same parties from relitigating the same cause of action, while collateral estoppel bars the party against whom the claim is asserted, or a party in privity with the earlier party, from relitigating issues which have been decided with respect to a different cause of action. Boyd v. First Interstate Bank (1992), 253 Mont. 214, 218, 833 P.2d 149, 151. The collateral estoppel bar extends to all questions essential to the judgment which were determined by a prior judgment. <u>Boyd</u>, 833 P.2d at 151.

7

It is well established that this Court applies a three part test to determine if collateral estoppel bars relitigation of an issue. Aetna Life and Casualty Insurance Company v. Johnson (1984), 207 Mont. 409, 413, 673 P.2d 1277, 1279; In re Marriage of Stout (1985), 216 Mont. 342, 349-50, 701 P.2d 729, 733-34; Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 701. The three prongs are:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

Aetna, 673 P.2d at 1279.

In determining whether collateral estoppel applies, satisfying the first prong of the test is the most crucial. State v. Young (1993), 259 Mont. 371, 377, 856 P.2d 961, 965, citing Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 702. To meet this part, "the identical issue or 'precise question' must have been litigated in the prior action." Young, 856 P.2d at 965.

MPC contends that the first prong of the test is not satisfied because the claim for breach of the implied covenant is not the same issue as claims for fraud and constructive fraud. Because fraud and constructive fraud were never considered in the proceedings in Haines I, MPC concludes that the findings from Haines I which were affirmed by this Court are irrelevant. We disagree and conclude that the first prong of the three part test

8

is met in this case.

The term "issue" does not equate with the elements of a cause of action. This Court has previously declared that "[t]he bar that arises from collateral estoppel extends to all questions essential to the judgment and actively determined by a prior valid judgment." Brault v. Smith (1984), 209 Mont. 21, 26, 679 P.2d 236, 238. Collateral estoppel also prevents relitigation of determinative facts which were actually or necessarily decided in a prior action. Boyd, 833 P.2d at 151. In addressing whether a change in legal theory precludes the collateral estoppel bar, Moore's Federal Practice states:

> A new contention is not, however, necessarily a new issue. If a new legal theory or factual assertion put forward in the second action is "related to the subject-matter and relevant to the issues" that were litigated and adjudicated previously, "so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." (Citations omitted.)

Vol. 1B, Moore's Federal Practice ¶ 0.443[2], at 760.

In this case Haines originally pled breach of the covenant of good faith and fair dealing to recover punitive damages. As a result of our remand order Haines amended its pleadings to allege fraud and constructive fraud. Although the legal theory relied upon was different, this change did not result in a change in the facts and law established in Haines I. Therefore, the precise issue that MPC is collaterally estopped from relitigating is as found by Judge Olson, the willful conduct of MPC in enticing Haines into renewing the letter of credit when in fact, all MPC was trying to do was gain time to be in a position to draw on the letter of

9

credit.

Moreover, because this Court affirmed the findings and conclusions of the District Court regarding MPC's actions surrounding the extension of the letter of credit, we also conclude that there was a final judgment on the merits as to that issue and that the second prong of the test is thus satisfied. Finally, the third prong is clearly satisfied as Haines advanced its claims against MPC in Haines I and II. In light of our holding in Haines I, MPC is collaterally estopped from arguing that it did not mislead Haines into extending the letter of credit.

## II. LAW OF THE CASE

The law of the case doctrine also precludes relitigation of the facts and conclusions issued by the District Court in Haines I which we affirmed on appeal. The rule of law of the case provides that in deciding a case upon appeal, when the Supreme Court states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent proceedings, both in the trial court and upon subsequent appeal. Zavarelli v. Might (1989), 239 Mont. 120, 124, 779 P.2d 489, 492.

The plaintiff in Zavarelli, originally brought an action attempting to enjoin his sister from destroying or interfering with a sewer system. Zavarelli v. Might (1988), 230 Mont. 288, 749 P.2d 524. The district court in the first proceeding found that part of the septic system serving the plaintiff's apartment complex intruded onto the defendant's property, but that the plaintiff had

10

a prescriptive easement over the defendant's land. _Zavarelli_, 749 P.2d at 526. On appeal we reversed and remanded the district court's decision finding that a prescriptive easement could not be supported. _Zavarelli_, 749 P.2d at 527. On remand, the district court made no further findings of fact, but did make additional conclusions of law that as a result of mutual mistake in the boundary line the plaintiff did have a property right in the land where the septic tank was located. _Zavarelli_, 779 P.2d at 492. The defendant appealed alleging that the district court erred in allowing a new affirmative defense of mutual mistake. _Zavarelli_, 779 P.2d at 492.

This Court determined that although the doctrine of law of the case precluded the district court on remand from determining as a matter of law that the plaintiff had a prescriptive easement in the defendant's property, it did not, preclude the district court from reaching a different conclusion of law based on the facts which it had already found. _Zavarelli_, 779 P.2d at 493. (Emphasis added.)

When a case is reversed and remanded for further proceedings, the issues are generally open on a retrial. _Zavarelli_, 779 P.2d at 493. However the trial court is not free to ignore the mandate and opinion of the reviewing court, but must proceed in conformity with the views expressed by the appellate court. _Zavarelli_, 779 P.2d at 493.

> On remand, the trial court may consider or decide any matters left open by the appellate court, and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision. (Emphasis added.)

11

Zavarelli, 779 P.2d at 493.

In Haines I, we affirmed Judge Olson's findings and conclusions in all respects except as to the matter of the award of $50,000 compensatory damages (Haines I -- issue III) and except as to the court's legal conclusion, based on pre-Story law, that a breach of the covenant of good faith and fair dealing was a sufficient basis on which to award punitive damages (Haines I -- issue IV).

We did not disagree with or reverse Judge Olson's findings of fact on which he awarded punitive damages. In fact, we concluded that the issues of fraud and the breach of the covenant of good faith and fair dealing as applied in this case to be "inextricably intertwined." Haines, 830 P.2d at 1240. We simply held that between the time the parties litigated through the trial and the time the case was ready for decision on appeal, we changed the law, and that on the basis of the changed law, punitive damages could not be awarded on the basis of the then existing record, without more. Our singular purpose on remand was to allow the parties to plead, prove, argue and defend against the "without more," that is, to: 1) allow Haines to amend its pleadings to allege the necessary legal basis (fraud, constructive fraud, or other theory) to prove punitive damages under Story; 2) to allow MPC to amend its pleadings to assert fraud, constructive fraud, or other punitive damages defenses; and, 3) to allow the district court to determine whether Judge Olson's findings and conclusions, alone or with additional evidence on the new theories justified an award of

12

punitive damages.

We did not reverse and remand for a whole new or **de novo** trial. To the contrary, under the posture of the case on the limited remand ordered, once the parties amended their pleadings, the District Court was limited: 1) to determining, on the basis of Judge Olson's findings and conclusions, whether punitive damages were justified on the basis of any new theory plead (i.e., was Haines entitled to summary judgment simply on the basis of Judge Olson's findings and conclusions); 2) if not, to accepting additional evidence in support of and against the new legal theories pled, and to making additional findings on the additional evidence as regards the new legal theories; 3) to making additional conclusions of law on whether Judge Olson's findings, along with the new findings, justified an award of punitive damages under the new legal theories pled; and, 4) if punitive damages were justified, to determining the amount thereof.

In Story v. City of Bozeman (1993), 259 Mont 207, 230-31, 856 P.2d 202, 216 (Story II), we differentiated between a case where we remand for a new trial without saving certain portions of the judgment (i.e. a trial **de novo**) and a case where we remand with limiting instructions. Our remand in Haines I was of the latter type and not the former. It was error for the District Court in Haines II to disregard Judge Olson's findings and conclusions from Haines I concerning the breach of the covenant of good faith and fair dealing which we affirmed on appeal.

The findings and conclusions in Haines I that MPC misled

13

Haines into extending the letter of credit, that MPC's conduct was oppressive and constituted implied malice, and that MPC breached the covenant of good faith and fair dealing, all stand as the law of the case, and the District Court was in error to disregard and contravene those in Haines II.

On remand, the District Court must consider the claim for punitive damages based on the new theories pled and on any additional evidence received in Haines II; it is not, however, at liberty to disregard or contravene Judge Olson's findings and conclusions in reaching its decision.

REVERSED and REMANDED for further proceedings consistent with this opinion.

_____
                                         Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

Justice Karla M. Gray did not participate in this opinion.

June 20, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Randy J. Cox & Sam E. Haddon
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT  59807-9199

Bruce R. Toole, Esq. & Donald L. Harris, Esq.
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT  59103-2529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy