No.   94-617

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ESTATE OF ROBERT EIDE,

    Plaintiff and Respondent,

    -vs-

JASON TABBERT,

    Defendant and Appellant.

FILED

JUL 27 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Palmer Hoovestal, Attorney at Law, Helena,
            Montana

        For Respondent:

            James P. Reynolds; Reynolds, Motl & Sherwood
            Helena, Montana


                        Submitted on Briefs:   April 20, 1995

                                   Decided:   July 27, 1995

Filed:

Justice Karla M. Gray delivered the Opinion of the Court.

Jason Tabbert (Tabbert) appeals from the judgment entered against him by the First Judicial District Court, Lewis and Clark County, in the amount of $55,579.11, and from the court's underlying order granting partial summary judgment to the Estate of Robert Eide on the issue of liability. We affirm.

In August of 1990, Robert Eide (Eide) suffered lacerations and a broken jaw in an altercation between himself and Tabbert. As a result of the altercation, the Lewis and Clark County Attorney filed a petition in Youth Court alleging that Tabbert was a delinquent youth for having committed the offense of aggravated assault against Eide. Following a jury trial in November of 1990, in which the jury found that Tabbert had committed aggravated assault, Tabbert was adjudicated a delinquent youth. Tabbert did not appeal.

Eide subsequently filed a tort action against Tabbert for assault and battery. After Tabbert answered the complaint, Eide moved for partial summary judgment on the issue of liability. He argued that the jury's finding in Youth Court that Tabbert committed aggravated assault against him, and the Youth Court's adjudication that Tabbert was a delinquent youth, established Tabbert's liability in the civil action as a matter of law. Eide subsequently was killed in an unrelated automobile accident and his estate was substituted as plaintiff. (The estate is referred to as Eide herein.)

In the meantime, Tabbert petitioned the Youth Court for

2

postconviction relief and a new trial based on newly-discovered evidence. The "newly-discovered evidence" consisted of statements from witnesses to the altercation between Tabbert and Eide who were prepared to testify that someone other than Tabbert was responsible for Eide's broken jaw. The Youth Court denied the petition and Tabbert appealed. We determined that the evidence could have been discovered prior to trial through due diligence and, therefore, that it did not satisfy applicable "newly-discovered evidence" criteria. In re Matter of J.R.T. (1993), 258 Mont. 520, 523-24, 853 P.2d 710, 712. We held that the Youth Court did not abuse its discretion in denying Tabbert's motion for postconviction relief. Matter of J.R.T., 853 P.2d at 712.

Following our decision in Matter of J.R.T., the District Court granted Eide's motion for partial summary judgment on the liability issue. The court determined, based on the jury's aggravated assault finding and Tabbert's adjudication as a delinquent youth, that the doctrine of collateral estoppel applied to conclusively establish Tabbert's liability for purposes of the civil litigation.

The damage issue was tried to a jury and resulted in a verdict against Tabbert for $55,579.11. Tabbert appeals.

Tabbert argues that the District Court incorrectly applied the doctrine of collateral estoppel in granting partial summary judgment to Eide on the liability issue. He contends that, although the Youth Court jury determined that he committed an aggravated assault against Eide, the actual cause of Eide's jaw injury remains a fact issue to be resolved by the civil jury. On

that basis, he contends that he should have been permitted to introduce evidence during the civil trial that someone other than himself caused Eide's jaw injury. A district court's conclusion that the doctrine of collateral estoppel applies is a legal conclusion which we review to determine whether it is correct. Holtman v. 4-G's Plumbing and Heating (1994), 264 Mont. 432, 435-36, 872 P.2d 318, 320.

The doctrine of collateral estoppel precludes litigation of issues determined in an earlier action. Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 701 (citation omitted). We expressly have held that collateral estoppel prohibits the litigation of an issue in a civil trial that has been litigated in a prior criminal trial. Aetna Life and Cas. Ins. Co. v. Johnson (1984), 207 Mont. 409, 414, 673 P.2d 1277, 1280. Indeed, we stated that "the rigorous safeguards against an unjust criminal conviction, especially the requirement of proof beyond a reasonable doubt . . make collateral estoppel between criminal and civil trials less severe than between successive civil trials." Aetna, 673 P.2d at 1280. The Aetna rationale is applicable here, notwithstanding the difference between Youth Court proceedings and criminal proceedings in a district court, because the beyond a reasonable doubt standard applied to the Youth Court jury finding. See § 41-5-521(2), MCA.

For the doctrine of collateral estoppel to apply, the party asserting the doctrine must establish that: (1) the issue decided in the prior action was identical to that in the present action;

4

(2) a final judgment on the merits was rendered in the prior action; and (3) the party against whom the doctrine is invoked was a party, or in privity with a party, in the prior action. Aetna, 673 P.2d at 1279. Here, it is undisputed that the second and third elements of the doctrine are satisfied. The second element is satisfied by virtue of the Youth Court's final adjudication of Tabbert as a delinquent youth based on the jury's finding that he committed the aggravated assault on Eide. Regarding the third element, Tabbert is the party against whom the District Court applied the doctrine and he was the party in the prior Youth Court action. Strict identity of parties is not essential under these circumstances, so long as the party against whom the doctrine is advanced remains the same or is in privity with a party to the prior action. Aetna, 673 P.2d at 1279.

All that remains is to determine whether the issue determined in the Youth Court proceeding is identical to the liability-related causation issue presented in Eide's civil action. This first element of collateral estoppel is the most crucial. Haines Pipeline Const. v. Montana Power (1994), 265 Mont. 282, 288, 876 P.2d 632, 636. However, "[t]he term 'issue' does not equate with the elements of a cause of action." Haines, 876 P.2d at 636. Moreover, collateral estoppel applies to all questions, including relitigation of factual matters, which were necessary for the prior judgment. Haines, 876 P.2d at 636.

The issue before us is substantially similar to that presented in Aetna. There, Wayne Johnson (Johnson) had been convicted of

criminal mischief and arson for burning his business. Aetna, 673 P.2d at 1278. Johnson's insurer, Commercial Union, filed an action against Johnson to establish that it was not obligated to reimburse Johnson for his losses under the insurance policy. Aetna subsequently intervened in an effort to recover amounts paid to its insureds for damage to surrounding businesses under the liability portion of Johnson's policy; Aetna's claim for recovery required it to establish that Johnson's negligence, rather than his intentional acts, caused the fire. Aetna, 673 P.2d at 1278.

Commercial Union moved for summary judgment, arguing that collateral estoppel should prevent relitigation of the nature of Johnson's acts. Aetna, 673 P.2d at 1278. Aetna responded that the circumstantial evidence supporting Johnson's conviction and the lack of a sufficient arson investigation left factual issues to be determined by the civil jury in spite of Johnson's criminal conviction. Aetna, 673 P.2d at 1278. We concluded on appeal that "collateral estoppel bar[red] relitigation of the issue of whether Johnson intentionally set the fire on his business premises." Aetna, 673 P.2d at 1280. We determined that the issue in the criminal arson proceeding was identical to the key issue in the civil proceeding; namely, whether Johnson intentionally set fire to his business. Aetna, 673 P.2d at 1280.

Aetna is virtually indistinguishable from the present case and mandates the same result. Tabbert's adjudication as a delinquent youth was based on the jury's finding that he committed the offense of aggravated assault. An element of that offense is that the

6

person charged "cause[d] serious bodily injury to another." Section 45-5-202(1), MCA. Eide's serious bodily injury was his broken jaw; testimony that Tabbert caused the broken jaw was presented during the Youth Court proceedings in support of the charged aggravated assault which the jury found Tabbert had committed. Matter of J.R.T., 853 P.2d at 712.

We conclude that the issue of whether Tabbert caused Eide's broken jaw was litigated in the Youth Court proceedings and is identical to the key liability-related causation issue which Tabbert argues remains to be determined in Eide's civil action. Therefore, we further conclude that Eide has established the first element necessary for application of the doctrine of collateral estoppel. All three elements having been satisfied, we hold that the District Court did not err in granting partial summary judgment on liability to Eide based on application of the doctrine of collateral estoppel.

Citing to the Restatement (Second) of Judgments § 28(5)(c) (1980), Tabbert argues alternatively that there is a "clear and convincing need for a new determination" of causation in the civil action because he "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." This argument is without merit.

Section 28 of the Restatement (Second) of Judgments sets forth exceptions to the general rule of issue preclusion. The exception contained in subsection (5)(c) applies, by its express terms, only where conduct of the opposing party or other special circumstances

7

result in a party's inadequate opportunity or incentive to obtain a full adjudication in the earlier case. Tabbert does not argue that conduct or misconduct by the prosecution prevented a full and fair adjudication of the causation issue in the Youth Court proceedings. Nor does Tabbert assert any other "special circumstances" which precluded him from having an adequate opportunity or incentive to obtain a full and fair adjudication in the Youth Court proceedings. Thus, the express circumstances which may bring the § 28(5)(c) exception into play are not met here.

Tabbert's contention that his Youth Court counsel may not have had an adequate incentive to discover and present additional causation-related evidence is entirely speculative and, in any event, unavailing. The primary focus of the narrow exception to the issue preclusion rule on which Tabbert relies is not inadequate opportunity or incentive to obtain a full adjudication; the primary focus is whether conduct of the adversary or other special circumstances result in inadequate opportunity or incentive. See Restatement (Second) of Judgments § 28(5)(c) (1980). As stated above, neither of these foundational requirements for application of this exception to the rule of issue preclusion is established here.

Affirmed.

_____
Justice

8

We concur:

_____

_____

_____

_____
Justices