No. 87-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

ERMINDO ZAVARELLI,

        Plaintiff and Respondent,

   -vs-

ANGELA MIGHT,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
             In and for the County of Missoula,
             The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Connell, Beers & MacDonald; Thomas J. Beers, Missoula,
        Montana

    For Respondent:

        Hugh Kidder, Missoula, Montana

_____

Submitted on Briefs:  Oct. 22, 1987

Decided:  February 10, 1988

Filed:  **FEB 1 0 1988**

_____
                 Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case, the judgment of the District Court, Fourth Judicial District, Missoula County, permanently enjoined Angela Might from destroying or interfering with the existing sewer system servicing the apartments of Ermindo Zavarelli, denied Angela Might any money damages, and denied each party costs of suit. We reverse.

Ermindo Zavarelli and Angela Might are brother and sister. Through the probated will of their father, in 1968, they each became life tenants with undivided interests in the whole of certain abutting tracts of land in Missoula County, previously owned by the father.

The father died in 1966. Beginning in that year, Ermindo commenced with building certain apartment buildings on the property subject to the then undivided life estates of the parties. This continued until eight apartments were built, all of them being situated on Lot 18, Cobban and Dinsmore Orchard Homes No. 2.

Ermindo obtained permits for the installation of septic tanks and sewer drainage lines from the Missoula County Health Department. The court found that part of the septic tank system (or sewer system) intruded on lands contained within the Eddy Addition to the south of said Lot 18. The court further found that Ermindo placed the septic tanks on the property before the life estate interests were divided north of a board fence which the court found was understood by the parties to be on the south property line of Lot 18.

The foregoing recitation of the location of the septic tank system as to Eddy Addition comes from our interpretation of the findings of the District Court. We are hampered in an

- 2 -

exact determination because no exhibit or testimony which is part of the appeal record, by diagram or otherwise, sets forth the location of the apartments and the septic tank system anywhere near the Eddy Addition. The system may indeed intrude over the north border of Tract A, which is wholly contained within Lot 18 of Cobban and Dinsmore Orchard Homes No. 2 Subdivision. Regardless, the principles here set forth are the same.

On February 25, 1971, Ermindo made, executed and delivered to Angela a quitclaim deed to all of the lots contained in Blocks 2 and 3 of the Eddy Addition, plus tracts of land described as Tract A and Tract B, situated within Lots 18 and 19 of Cobban and Dinsmore Orchard Homes No. 2. In like manner, on February 25, 1971, Angela made, executed and delivered a quitclaim deed to Ermindo of all of the remaining portions of Lots 18 and 19, Cobban and Dinsmore Orchard Homes No. 2. The remaindermen after the life estates were all grandchildren of the deceased father and all of the remaindermen joined in the execution and delivery of the quitclaim deeds. Thus, the parties agree that the issues in this case involve only the rights of the life estate holders, Ermindo and Angela.

In 1983, Angela had survey work done to locate the property lines pursuant to the descriptions in the 1971 quitclaim deed. She discovered thereby that the sewage disposal system for the apartments of Ermindo were located partially to the south of his property line and were partially on the property deeded to her. The court found that Angela had no knowledge of the existence and location of the septic tanks and system partially on her land until the survey.

After the survey, Angela attempted to place a fence along the boundary lines as surveyed, keeping it

approximately 1 foot inside her boundary. Some unknown person cut the wire, took down the fence posts and removed the surveying pins. Ermindo denied any knowledge of the destruction of the new fence. The court found that the new fence interfered with the operation of Ermindo's apartments and maintenance of the septic tanks serving those apartments.

On November 18, 1983, Ermindo filed in the District Court his complaint for injunctive relief against Angela, seeking temporary, preliminary and permanent injunctions against her for interfering with the existing sewer system of Ermindo's and to prevent her from further fencing the property. Angela responded, contending ownership of the properties as set forth in the quitclaim deeds, alleging the unwanted presence of the septic tanks upon her lands, contending that she had been damaged, that she had no longer full utility of her property, and, that the value of her land had decreased and counterclaimed for appropriate relief.

Trial was had before the District Court, sitting without a jury. The District Court found and concluded that the parties had by mutual agreement divided property subject to the the life estates between themselves by delineating in the quitclaim deeds the exact descriptions of the property each party was to own; that they relied on the legal descriptions as set forth in recorded subdivision plats in Missoula County; that they were both under the impression that the fence erected by the father was a boundary fence between Cobban and Dinsmore Homes No. 2 Subdivision and the Eddy Subdivisions; that the trespass to Angela's property by Ermindo was unknown to her until 1983 when she made the survey, and the court further concluded:

> That the plaintiff has built apartments close to
> the south boundary of his property where it abuts
> the property of the defendant. That when he built
> the apartments, plaintiff unknowingly placed the

septic systems for the apartments partially on the property of the defendant. That the septic systems for the apartments were in place long before the parties divided the property and plaintiff acquired a prescriptive easement for said septic tanks system.

Based on the foregoing, the court ordered that Angela be permanently enjoined from interfering with the existing sewer system for the apartments of Ermindo, and denied her any other relief.

Angela has appealed the final decision to this Court.

Issues raised by Angela are that the District Court erred in determining that Ermindo had acquired a prescriptive easement for the sewer system on her property; that it erred in allowing the issue of prescriptive easement to be raised after trial; and that extrinsic evidence to the parties' agreement to divide the life estate should not have been admitted.

It is clear that neither the findings of the court nor the evidence will support a prescriptive easement in this case.

A prescriptive easement is acquired by open, exclusive, notorious, hostile, adverse, continuous, and uninterrupted use for a period of five years. Section 23-2-322, MCA. The party claiming title to an easement by prescription must show that the possession was open, notorious, exclusive, and adverse to the other party, and under a claim of right. The absence of anything to show a claim of right on the part of a person claiming the prescriptive easement disposes of the matter of prescription, Custer Consolidated Mines v. City of Helena (1916), 52 Mont. 35, 45, 156 P. 1090, 1094. The circumstances of the possession must be sufficient to put a prudent person upon inquiry. Brannon v. Lewis and Clark County (1964), 143 Mont. 200, 205, 387 P.2d 706, 709-710.

The District Court here found that "the trespass became known to [Angela] in 1983, when a survey of her property was completed." Such a finding negates that the claim of easement by Ermindo was "open . . . notorious, hostile, adverse . . ." The statutory elements, therefore to establish a prescriptive easement are missing. See Custer Con. Mines. Co. v. Helena (1916), 52 Mont. 35, 156 P.2d 1090.

The findings of the District Court that the septic systems were in place long before the parties divided the property and the plaintiff acquired a prescriptive easement for the septic tanks are not supported by the evidence. The statutory period for prescriptive easements, five years had not expired when the parties divided their estates. Section 70-19-405, MCA. Until the parties divided their life estate interests in 1971, Ermindo was an equal owner of an undivided life estate in all of the property formerly owned by their father. It is elementary that one cannot acquire a prescriptive easement against oneself as owner.

Ermindo's complaint proceeds on the theory that he and Angela had divided the property in accordance with directions received from the father and that the true boundary line between their property should have been that marked by a board fence south of Lot 18. Although the District Court made findings and conclusions respecting the location of the fence, the judgment of the court that there was a prescriptive easement, is a refutation of any title to the disputed area in Ermindo and is, instead, a conclusion that Angela owned the land up to the subdivision line of Lot 18, but subject to the purported prescriptive easement of Ermindo. Ermindo can not both own the surface of the land up to the line of the board fence, and have a prescriptive easement under the same ownership. The easement would merge in the title. Ermindo could not claim the title to the

surface of the disputed area south of Lot 18 by adverse possession, since he did not pay the taxes thereon. Section 70-19-411, MCA.

Since the prescriptive easement cannot be supported, the judgment must be reversed. We remand for such further proceedings as are necessary in the light of this opinion and the facts found by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices