DA 06-0664

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 241

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

SYLVESTER WAYNE HAMELINE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 05-472
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; Joel Thompson,
Deputy County Attorney, Great Falls, Montana

                Submitted on Briefs:  February 20, 2008

                            Decided:  July 8, 2008

Filed:

_____
               Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Sylvester Wayne Hameline (Hameline) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on his conviction and sentence for the offense of sexual intercourse without consent.  We affirm.

¶2     Hameline raises the following issues on appeal:

¶3     1.   Did the District Court err in imposing conditions on Hameline's sentence restricting his contact with children under the age of 18 and his access to pornographic materials?

¶4     2.  Did the District Court err in imposing an annual polygraph testing condition on Hameline's sentence?

**BACKGROUND**

¶5     In September of 2005, the State of Montana (State) charged Hameline by information with the felony offenses of sexual intercourse without consent and aggravated burglary. Hameline subsequently appeared in the District Court to plead guilty to the sexual intercourse without consent charge pursuant to a plea agreement with the State.  In exchange for Hameline's guilty plea, the State agreed to recommend a 40-year sentence at the Montana State Prison (MSP), with 25 years suspended, and to dismiss the aggravated burglary count. The District Court accepted Hameline's guilty plea, granted the State's motion to dismiss the aggravated burglary charge, ordered that a presentence investigation be conducted and scheduled a sentencing hearing.

2

¶6     The presentence investigation report (PSI) concurred in the State's recommendation that Hameline be sentenced to a term of 40 years with 25 years suspended.  Appended to the PSI was a psychological/psychosexual evaluation report regarding Hameline completed in February of 2006.   The evaluation report included 11 sentence and treatment recommendations, including that Hameline be required to complete chemical dependency and sexual offender treatment programs, be restricted from unsupervised contact with children under the age of 18, not possess or have access to pornography, and "submit to a treatment polygraph examination upon the request of his probation officer or therapist."  The PSI's 37 recommended conditions of sentence incorporated the sentence and treatment recommendations outlined in the psychological/psychosexual evaluation report, including that Hameline "submit to annual polygraph testing."

¶7     At the sentencing hearing, Hameline presented testimony from the psychologist who conducted the psychological/psychosexual evaluation, and the District Court heard sentencing recommendations from both parties.  Hameline also acknowledged that he received and reviewed the PSI, but he made no objections to its contents.  The court then sentenced Hameline to a 40-year term at the MSP, with 20 years suspended, and imposed the 37 recommended conditions on the suspended portion of the sentence.  The District Court subsequently entered its written sentence and judgment, and Hameline appeals.

**STANDARD OF REVIEW**

¶8     Hameline challenges the District Court's imposition of various conditions on the suspended portion of his sentence.   We review a sentencing condition for legality,

3

determining whether the condition is within statutory parameters. *State v. Ashby*, 2008 MT 83, ¶¶ 8-9, 342 Mont. 187, ¶¶ 8-9, 179 P.3d 1164, ¶¶ 8-9. If the condition falls within statutory parameters, we then review the reasonableness of the condition to determine whether the sentencing court abused its discretion in imposing it. *Ashby*, ¶ 9.

## DISCUSSION

¶9 ***1. Did the District Court err in imposing conditions on Hameline's sentence restricting his contact with children under the age of 18 and his access to pornographic materials?***

¶10 Hameline challenges 10 of the sentencing conditions imposed by the District Court which restrict his contact with children under the age of 18 and his access to pornographic materials. Hameline does not assert that the District Court was without statutory authority to impose these conditions. Rather, he contends there is no evidence of record to support imposition of the conditions in this case. In other words, Hameline argues that the District Court abused its discretion in imposing the conditions. He does not contend that the conditions are illegal.

¶11 In response, the State first argues that Hameline is barred from challenging the propriety of these sentencing conditions on appeal because he failed to challenge the conditions in the District Court. We agree.

¶12 We generally refuse to review issues on appeal where the party failed to object in the trial court. *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, ¶ 8, 151 P.3d 892, ¶ 8. We have created an exception to this general rule which allows appellate review of a criminal sentence which is alleged to be illegal, or in excess of statutory mandates, even where the

4

defendant failed to object to the sentence in the trial court. *See State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). However, "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13.

¶13     When a sentencing court suspends all or a portion of a sentence, it is authorized to impose reasonable restrictions or conditions on the sentence which the court considers necessary for rehabilitation of the defendant or protection of society. *See* §§ 46-18-201(4)(o) and -202(1)(f), MCA. We previously have held that sentencing conditions which restrict a defendant's contact with persons under the age of 18 and his or her access to, or possession of, pornographic materials are authorized pursuant to the sentencing court's statutory authority to impose conditions relating to the defendant's rehabilitation, and the protection of the victim and society, where the conditions reasonably relate to the factual circumstances of the specific case. *See e.g. State v. Malloy*, 2004 MT 377, ¶¶ 8 and 15, 325 Mont. 86, ¶¶ 8 and 15, 103 P.3d 1064, ¶¶ 8 and 15.

¶14     The District Court had authority pursuant to §§ 46-18-201(4)(o) and -202(1)(f), MCA, to impose the 10 sentencing conditions to which Hameline objects here and, therefore, those conditions are within statutory parameters. Hameline's argument that the District Court abused its discretion because no evidence of record supports imposition of the conditions in this case is merely a contention that his sentence is objectionable, not that it is illegal. Consequently, the *Lenihan* exception is not available to Hameline here and we decline to address this issue further.

**¶15** ***2. Did the District Court err in imposing an annual polygraph testing condition on Hameline's sentence?***

**¶16** The District Court also imposed as a condition of Hameline's suspended sentence a requirement that he submit to annual polygraph testing. Hameline contends this condition is illegal on its face and must be stricken from his sentence. The State again notes that Hameline failed to object to this condition in the District Court, but concedes he is challenging the underlying legality of the condition rather than its reasonableness under the circumstances of this case. In light of the State's concession, we review the merits of this issue under the *Lenihan* exception.

**¶17** Hameline first asserts that the polygraph condition is illegal because results of a polygraph test are inadmissible in any court proceeding in Montana. He is correct that polygraph results are inadmissible, but he is incorrect that inadmissibility of results renders the polygraph condition illegal.

**¶18** In *State v. Staat*, 248 Mont. 291, 811 P.2d 1261 (1991), Staat was released on bond pending his appeal and his bond subsequently was revoked based on the results of a court-ordered polygraph test. We granted Staat's petition for writ of supervisory control and ordered that he be released from custody and his bond reinstated. *Staat*, 248 Mont. at 291, 811 P.2d at 1261. We observed that § 37-62-302, MCA (repealed by 1995 Mont. Laws Sec. 128, Ch. 429), provided that results of a polygraph examination could not be admitted as evidence in a Montana court of law, and stated that

> [i]n light of the lack of trustworthiness of the results of polygraph tests, we conclude that application of the above statute should not be limited to those court proceedings in which the rules of evidence govern, but should extend to

6

*every* proceeding in Montana courts of law.  This is critical in situations such as the one presented here, where the rules of evidence do not apply but where allowing the court to consider the results of a polygraph examination may deprive a person of his or her liberty based upon that evidence.

*Staat*, 248 Mont. at 292, 811 P.2d at 1261-62.  Although we held that polygraph examination results were not admissible in any court proceeding, the legality of the court's underlying order that Staat take a polygraph test was neither raised nor addressed.

¶19    We further refined the "not admissible" rule in *State v. Anderson*, 1999 MT 58, 293 Mont. 472, 977 P.2d 315.  There, Anderson submitted to a polygraph test as part of a psychosexual evaluation he agreed to undergo pursuant to a plea agreement.  The doctor who performed the evaluation and prepared the related report relied on the polygraph test in preparing the report; the probation officer also relied on the evaluation report in preparing the PSI.  *Anderson*, ¶¶ 4-5.  Anderson requested a continuance of the sentencing hearing for purposes of obtaining an evaluation without the use of a polygraph test, and the district court denied the request.  *Anderson*, ¶ 6.  On appeal, we reversed, reiterating our *Staat* holding that polygraph evidence may not be used in any court proceeding.  We also stated the prohibition applied to sentencing hearings.  In addition to the prohibition against the admissibility of polygraph evidence in a court proceeding, we further determined that any evidence otherwise admissible could be rendered inadmissible if a polygraph test was used to produce or influence the outcome of that evidence.  *Anderson*, ¶ 12.  "If a finder of fact, judge, hearing officer, evaluator or any other person in a similar position directly or indirectly allows polygraph results to be made a part of the review leading to a finding or recommendation in a court proceeding, no matter how careful such person may be in not disclosing such fact, the

7

entire review leading to the finding, decision or recommendation is tainted and may not be introduced into evidence." *Anderson*, ¶ 14. Again, however, while we reiterated the complete prohibition against the direct or indirect use of polygraph results in court proceedings, we did not prohibit requiring a polygraph test for other purposes. Nor does Hameline advance any authority in which we have held that requiring a person to undergo a polygraph test is, in and of itself, illegal.

¶20 Here, the polygraph condition at issue can be traced to the evaluation report's recommendation that it be imposed for sex offender treatment purposes. Moreover, the District Court imposed another condition requiring Hameline to be in either an approved and certified sex offender treatment program or an aftercare program during the entirety of his sentence. Hameline cites to no legal authority prohibiting a sentencing court from requiring such therapeutic polygraph testing. We repeat yet again our blanket prohibition on the use of polygraph test results in any way in any Montana court proceeding. We conclude, however, that the prohibition against the use of polygraph test results does not equate to a prohibition against requiring a person to submit to a polygraph examination.

¶21 Hameline also argues that the polygraph test condition is illegal because requiring the test violates a probationer's constitutional right against compelled self-incrimination under the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution. His premise is that he could be punished should he refuse to answer polygraph questions on the basis that he might incriminate himself.

¶22 The Fifth Amendment and Article II, Section 25 of the Montana Constitution provide that no person shall be compelled to testify against himself or herself in a criminal proceeding. Generally, this right to be free from compelled self-incrimination must be affirmatively invoked by the person claiming the right at the time of questioning; if a person fails to assert the right, it will be deemed waived. *State v. Fuller*, 276 Mont. 155, 160, 915 P.2d 809, 812 (1996). An exception to this general rule exists, however, where a person is not free to admit, deny or refuse to answer when questioned. *Fuller*, 276 Mont. at 161, 915 P.2d at 812. In other words, "an individual need not formally invoke the privilege if the government prevents a voluntary invocation of the Fifth Amendment by threatening to penalize the individual should he or she invoke it." *Fuller*, 276 Mont. at 162, 915 P.2d at 813. This has been termed a "classic penalty situation."

¶23 Where an individual reveals incriminating information under the compelled circumstances of a classic penalty situation, however, that information cannot be used as a basis for later criminal prosecution. *Fuller*, 276 Mont. at 167, 915 P.2d at 816. As we have stated,

> [w]e emphasize that this holding does not stand for the proposition that the State may not compel a defendant to answer. It can; indeed, in order for treatment to be effective, it must, because a defendant who refuses to disclose his offense history cannot be successfully treated. However, if the State chooses to compel answers to incriminating questions, it cannot use those answers against the defendant in a later criminal proceeding.

*Fuller*, 276 Mont. at 167, 915 P.2d at 816. Nor can the State punish an individual for invoking the right to be free from self-incrimination by choosing not to answer questions on that basis. *See State v. Imlay*, 249 Mont. 82, 91, 813 P.2d 979, 985 (1991).

9

¶24 Consequently, the constitutional right to be free from self-incrimination does not prevent the State, or here the District Court, from compelling Hameline to undergo polygraph testing. The right does, however, prevent the State and the District Court from using information gleaned from a polygraph test against Hameline to punish him.

¶25 We conclude Hameline has failed to establish that the condition on his suspended sentence requiring him to submit to polygraph testing is illegal or in violation of his constitutional right to be free from self-incrimination. As a result, we hold that the District Court did not err in imposing the annual polygraph testing condition on Hameline's sentence.

¶26 Affirmed.

/S/ KARLA M. GRAY

We concur:
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART