

DA 07-0099

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 391

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

KELLY DALE CLARK,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twentieth Judicial District,<br>In and For the County of Lake, Cause No. DC 2002-099<br>Honorable Deborah Kim Christopher, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Tammy K. Plubell;
          Assistant Attorney General, Helena, Montana

          Mitch Young, Lake County Attorney, Polson, Montana

                        Submitted on Briefs:  August 20, 2008

                                  Decided:  November 20, 2008

Filed:

                             _____
                                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellant Kelly Dale Clark (Clark) appeals the denial of his motion for a new trial, as well as the sentence imposed on him for a conviction of sexual assault. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    The factual background in this case was previously described in *State v. Clark*, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099 (*Clark I*).

¶3    On or about July 18, 2002, Clark's fourteen year-old stepdaughter (T.C.) returned home from babysitting and changed into a bikini in preparation to mow the lawn. *Clark I*, ¶ 5. Clark was home at the time, having returned from playing golf and was lying on a couch in the living room. T.C. later testified that Clark asked her if one of her breasts was larger than the other as she came into the living room, had her kneel beside him, and soon thereafter pushed up her bikini top and exposed her breasts. T.C. reacted by covering up her breasts with her hands to which Clark allegedly replied "It's not like I haven't seen boobs before." *Clark I*, ¶ 5. He then proceeded to show T.C. "boob exercises" she could perform by pushing her breasts up, down, and sideways. T.C. also stated that Clark had touched her nipples in the process. After the incident, Clark told T.C. that she did not need to tell her mother about what had happened. *Clark I*, ¶ 5.

¶4    T.C. later related these incidents to her mother Christina, and was eventually interviewed by law enforcement officials concerning the matter. *Clark I*, ¶¶ 6, 9. After T.C. reported the incident, Christina temporarily left Clark and obtained a restraining order against him. As a result of the investigation by law enforcement officials, Clark

2

was arrested and charged with sexual assault on July 31, 2002. Not long after his arrest, Clark and Christina were back in contact with one another. After resuming her relationship with Clark, Christina informed T.C. that she did not want her in her life as long as she did not tell the truth. *Clark I*, ¶ 9. At Christina's urging, T.C. contacted law enforcement and stated that she had lied during her interview. She was re-interviewed by law enforcement officials and asked to explain what she had lied about. T.C. essentially recounted the same facts adding only that she did not think Clark's acts were "perverted." When asked by law enforcement what prompted her to attempt to change her story, she recounted Christina's ultimatum that T.C. could no longer be in her life if she "kept lying."

¶5     Clark was tried before a jury in February 2003. *Clark I*, ¶ 7. At trial, T.C.'s credibility was questioned and evidence was presented showing that she had lied on several occasions and changed her story concerning the incident. When T.C. testified at trial, she continued to insist that she had lied in her first interview, but was unable to articulate what precisely she had lied about. Moreover, T.C. testified that Clark had initiated the contact, lifted up her bikini top, and touched her breasts.

¶6     At trial, Clark testified on his own behalf and offered a different version of events. Clark did not dispute that he had touched T.C.'s breasts, but testified that T.C. had initiated the conversation and had herself lifted up her bikini top, and that he had only touched her breasts with two fingers on the inside of her breasts in order to verify whether they were of unequal size. *Clark I*, ¶ 11. Clark also stated that he was shocked when T.C. lifted up her bikini top, and reacted in surprise by reaching out and touching

3

her breasts. He also denied that he had actually performed breast exercises on her, but instead simply described to her the breast exercises that she could do and that she performed them on herself. Additionally, in closing arguments Clark maintained that T.C. was not a reliable witness based on her recanted statements and admitted lies, and that there was no evidence that Clark's touching of T.C.'s breasts was sexual in nature.

¶7 A jury ultimately convicted Clark of sexual assault and he was sentenced to twenty years in prison with sixteen suspended. *Clark I*, ¶ 16. After Clark's conviction, T.C. was sent to live with a woman named Alana Myers and her husband, who was a pastor in Bigfork. *Clark I*, ¶ 14. Both Clark and Christina warned Myers that T.C. had a tendency to lie. While T.C. was living with her, Myers told her that if she had lied about the incident with Clark, she needed to tell the truth. T.C. subsequently recanted her testimony and memorialized her recantation in a letter, which she swore to under oath.

¶8 In the letter, T.C. stated that she, not Clark, had initiated the interaction between them by asking Clark if one of her breasts was larger than the other. T.C. also claimed that she, not Clark, had lifted up her bikini top and exposed her breasts to Clark. Additionally, T.C. stated that Clark did not actually touch her nipples and that her previous testimony to that effect was a lie. Instead, T.C. stated that Clark merely touched the side of her breasts. Furthermore, T.C. stated that Clark did not perform the breast exercises directly on her, but instead demonstrated them on himself. T.C also stated that while the interaction was a little uncomfortable, it was only due to the fact that the conversation involved sexual matters, and not because she thought Clark was after her, coming on to her, or wanted to do more to her than what she initially asked. At the end

4

of this written statement, T.C. reiterated that she saw nothing "perverted or wrong" in what happened, and blamed any characterizations to the contrary on the twisting of her words by the prosecution during her testimony at trial.

¶9      In March 2003, Clark moved for a new trial on the basis of T.C.'s letter. *Clark I*, ¶ 15.  The District Court held a hearing on this motion, but ultimately denied it. Clark appealed.  On appeal, we reversed the District Court's denial of Clark's motion for a new trial.  In *Clark I*, we revisited and then revised the analysis to be employed by a district court when considering a defendant's motion for a new trial.  *Clark I*, ¶¶ 27-38.  We stated that in order to prevail on a motion for a new trial in light of newly-discovered evidence, the defendant must satisfy the following five-factor test:

> (1) The evidence must have been discovered since the defendant's trial;

> (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;

> (3) the evidence must be material to the issues at trial;

> (4) the evidence must be neither cumulative nor merely impeaching; and

> (5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark I*, ¶ 34.

¶10      Under this revised standard, we reversed the district court's denial of Clark's motion because of "our inability to glean from the record the District Court's reasons for denying the motion," and because we could not determine whether the district court had correctly applied the law.  *Clark I*, ¶ 42.  Thus, we remanded the case "for the District Court to undertake anew Clark's motion for a new trial."  *Clark I*, ¶ 43.

5

¶11 On February 23, 2006, the District Court held a new hearing on Clark's motion. At this hearing, counsel for parties presented oral argument but did not present new testimony or evidence. After this hearing, the District Court once again denied Clark's motion for a new trial, and issued an order explaining its analysis.

¶12 In its analysis, the District Court reviewed the evidence and testimony that had been presented at the first hearing on a new trial, and concluded that factors (1) through (3) of the *Clark I* test were satisfied, but that factors (4) and (5) were not. At the first hearing in 2003, T.C. testified to the version of events as contained in the letter. However, she nonetheless asserted that "she was shocked and surprised when the defendant touched her breast." Clark also testified at the 2003 hearing, reiterating his version of events as related at trial. With respect to factor (4), the District Court concluded that the new evidence was cumulative and merely impeaching. Under factor (5), the District Court concluded there was not a reasonable probability that the consideration of T.C.'s letter by a jury would result in a different outcome. The District Court noted that it was still undisputed that Clark had touched T.C.'s breasts. The District Court further observed that the only factual change in events as set forth in the letter was that T.C. now stated that she, not Clark, initiated the interaction and lifted up her top, and that Clark's touching of her breasts was not "perverted." However, the District Court noted that the jury had already heard this version of events in Clark's testimony at trial.

¶13 The jury had also already heard evidence concerning T.C.'s reputation for lying and her motive for recanting her various versions of events. The District Court observed

6

that in *Clark I* we expressed the view that child recantations are notoriously unreliable and suspect. In this regard, the District Court noted that T.C. had been physically and emotionally removed from her mother as a result of her allegations against Clark and specifically advised that this separation would continue as long as she continued to make allegations against Clark. Additionally, T.C. had received encouragement to recant her previous testimony from at least four separate authority figures, including her mother, stepfather, counselor, and her pastor's wife. Moreover, she still testified at the hearing on Clark's motion for a new trial that his actions "shocked and surprised her." This testimony was inconsistent with her claim that Clark's actions in touching her breasts were consistent with his role as a father figure, thus weakening further the credibility of the letter. Additionally, the District Court observed that Clark's testimony that he too was "shocked and surprised" when T.C. pulled down her top was inconsistent with what he actually did at the time, "which was to reach toward T.C. and put his fingers on her breast." In light of the inherent contradictions of both T.C.'s latest recantation and Clark's own testimony at trial, the District Court concluded that T.C.'s letter would not be believed by a jury, and its consideration would not lead to a reasonable probability of a different outcome.

¶14 After the District Court again denied his motion for a new trial pursuant to our order in *Clark I*, Clark moved to amend the sentence originally imposed on him on December 11, 2003. The District Court had sentenced Clark to twenty years in prison with sixteen suspended and ordered Clark to complete Phase I and II of sexual offender treatment before becoming eligible for parole. As a component of Phase II treatment

7

offered at the Montana State Prison, Clark would be required to admit his guilt to the sexual assault charge. Phase II sex offender treatment for "deniers," i.e., those who are unable or unwilling to admit their guilt, was only offered outside of prison. Because he steadfastly denied his guilt, Clark argued that he could not complete Phase II unless he relinquished his constitutionally guaranteed right against self-incrimination under the Fifth Amendment to the United States Constitution. The District Court agreed with Clark, and in an order dated August 4, 2006, vacated its original judgment and set a re-sentencing hearing on the matter.

¶15 The District Court, the State, and Clark's attorney all apparently agreed that the mandatory minimum sentence for sexual assault under § 45-5-502(3), MCA (2001) was four years. At the re-sentencing hearing, Clark argued that he was eligible for an exception to the mandatory minimum for sexual assault under § 46-18-222(6), MCA (2001). The District Court disagreed and re-sentenced Clark on December 29, 2006 to twenty years in the Montana State Prison with sixteen suspended, giving him credit for time served since his initial sentencing on November 21, 2003. The District Court declined to find that an exception to the mandatory minimum sentence for sexual assault applied in his case. The District Court also removed the sentencing condition that Clark would be eligible for parole after completing Phase II sex offender treatment. The net effect of this re-sentencing was that Clark would have to serve out the four year mandatory minimum, and would not be eligible for parole before that time. The District Court stated that it was not punishing Clark for standing upon his constitutional rights, but said it simply could not meet its obligation to protect society if it released Clark

8

before the mandatory minimum of four years without Clark successfully completing Phase II treatment. Additionally, the District Court re-imposed a total of thirty-three conditions to apply to Clark during the suspended portion of his sentence while Clark was on probation.

¶16 Clark now timely appeals the denial of his motion for a new trial, as well as his re-sentencing by the District Court on December 29, 2006. We restate the issues on appeal as follows:

¶17 **Issue One:** *Did the District Court abuse its discretion by denying Clark's motion for a new trial?*

¶18 **Issue Two:** *Did the District Court abuse its discretion in requiring Clark to serve the mandatory minimum term of four years for the sexual assault conviction?*

¶19 **Issue Three:** *Did the District Court abuse its discretion in imposing probation conditions on Clark's suspended sentence?*

### STANDARD OF REVIEW

¶20 We generally review a district court's denial of a motion for a new trial under the abuse of discretion standard. *Clark I*, ¶ 18. To prevail on a motion for a new trial, the defendant must satisfy the five-factor test from *Clark I*. (*See* Opinion, ¶ 9.) The findings of fact made by the district court under this five-factor test must be supported by a preponderance of the evidence and will be reviewed under the clearly erroneous standard. *Clark I*, ¶ 39.

¶21 We review the district court's imposition of a sentence for legality, to determine whether a sentence is within statutory parameters. *State v. Vernes*, 2006 MT 32, ¶ 27,

9

331 Mont. 129, ¶ 27, 130 P.3d 169, ¶ 27.  However, we review for an abuse of discretion the reasonableness of conditions imposed upon probation.  *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9.

## DISCUSSION

¶22    **Issue One:** *Did the District Court abuse its discretion by denying Clark's motion for a new trial?*

¶23    Clark argues the District Court abused its discretion in denying his motion for a new trial.  Clark maintains the District Court overlooked a significant evidentiary aspect of T.C.'s letter—namely, that now T.C. essentially agrees with Clark that she, not Clark, was the one who initiated the discussion about her breast size and that she was the one who had pulled down her bikini top.  Clark argues that a consideration of T.C.'s letter would change the entire character of the State's case against him.  Clark argues the State's evidence that he initiated the interaction and pulled down the bikini top was the State's primary proof of his alleged criminal intent.  T.C.'s recantation would change the circumstances under which a jury would evaluate his intent and whether or not the contact was sexual in nature.  With this new evidence, Clark argues that his actions may be seen as bad judgment, but the evidence of sexual contact is now removed.  Therefore, T.C.'s letter is not cumulative or merely impeaching.  Thus, the District Court erred in analyzing this new evidence under factor (4).

¶24    With respect to factor (5), Clark asserts that the admission of the letter would have a reasonable probability of changing the outcome of the case.  Clark argues that T.C.'s testimony at the 2003 hearing on the new trial motion explained her motivation for

10

complaining against Clark in the first place—i.e., that she was angry at Clark for being a harsh disciplinarian which is why she originally accused him. However, she maintained that she failed to appreciate the consequences of lying about the incident, and was then later frightened about what might happen to her if she recanted altogether, leading to her partial recantation in the second interview. Thus, Clark argues, while there is no guarantee the letter would be seen by a jury as credible, he avers that it nonetheless is beyond the District Court's discretion to find that a jury would not believe T.C.'s recantation and conclude there is not a reasonable probability of a different outcome.

¶25     Under factor (4), the defendant must demonstrate that the newly discovered evidence is "neither cumulative nor merely impeaching." *Clark I*, ¶ 34. The District Court concluded that the proffered evidence was "merely impeaching and cumulative." Cumulative evidence is statutorily defined as "additional evidence of the same character to the same point." Section 26-1-102(4), MCA. Evidence is considered "merely impeaching" when it is collateral in nature and does "not have a direct bearing on the merits of the trial under review." *Jackson v. State*, 884 A.2d 694, 704 (Md. Spec. App. 2005). We are inclined to agree with Clark that the evidence in question is not collateral and therefore is potentially not "merely impeaching." However, we do conclude the evidence is cumulative, as T.C. has already recanted once before, and evidence of this fact was before the jury. Thus, the factor (4) analysis by the District Court was arguably partially incorrect; nonetheless, any error in this regard is not determinative.

¶26     In order to prevail on a motion for a new trial under *Clark I*, the defendant must satisfy all five factors. In this case, we agree with the District Court that Clark has failed

11

to satisfy his burden under factor (5). Thus, we affirm its denial of Clark's motion for a new trial.

¶27    In *Clark I*, we stated that factor (5) is likely to be the "crux" of a district court's evaluation of a motion for a new trial. *Clark I*, ¶ 36. We also stated that the "reasonable probability" standard under this factor "properly leaves to the trial judge determinations of weight and credibility of the new evidence, and to consider what impact, looking prospectively at a new trial with a new jury, this evidence may have on that new jury." *Clark I*, ¶ 36. With respect to a district court's evaluation of recantations under this factor, we specifically stated as follows:

> In the context of recantations, for example, nothing in our decision today negates the concerns we expressed in [*State v. Perry*, 232 Mont. 455, 758 P.2d 268 (1988)] that recantations are to be "viewed with great suspicion" and that they "demonstrate[] the unreliability of a witness," lest the finality of trial verdicts be at the mercy of the scofflaw or unreliable witness. *Perry*, 232 Mont. at 466, 758 P.2d at 275. In addition, it is understood that the recanting witness lacks credibility by virtue of the fact that he has already lied at least once, [*United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992)] ("where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times"), but the function of the district court in this instance is to examine how the recanting witness's credibility may affect a new jury's verdict. To take a similar but more distinctive situation, recantations by child victims of sexual abuse are notoriously unreliable and suspect, see *People v. Schneider* (Colo. 2001), 25 P.3d 755, 763 (collecting cases), and that reality could appropriately contribute to a district court's evaluation of the credibility of a recantation in those circumstances and the recantation's subsequent effect on a jury. These concerns are but some of what a district court may consider . . . when ruling on a motion for new trial.

*Clark I*, ¶ 37.

12

¶28 In *Crosby v. State*, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, we further explained how a district court properly analyzes a motion for a new trial under this factor. In that case, defendant Crosby was convicted of sexual intercourse without consent on January 20, 1996, and given a ten-year sentence at the Montana State Prison. *Crosby*, ¶ 5. The victim, Crosby's then ten-year-old daughter, had testified at trial against him. Several years later, when the victim was approximately twenty, she gave a sworn statement in which she recanted her original trial testimony. On February 26, 2003, Crosby filed a petition for postconviction relief, alleging that newly discovered evidence would demonstrate his actual innocence. *Crosby*, ¶ 6. The district court held an evidentiary hearing on Crosby's petition. The victim testified that her mother had influenced her to accuse Crosby at the time of the original trial, and that the events to which she originally testified did not actually occur. *Crosby*, ¶ 7. Both the State and Crosby also presented expert testimony concerning the credibility of childhood testimony given the stressful home conditions the victim was under at the time of trial.

¶29 The district court denied Crosby's motion and he appealed. In its order, the district court had found, as a matter of law, that the recanting testimony was untrue. *Crosby*, ¶ 12. Applying the test from *Clark I*, we reversed. In particular, we noted that in *Clark I*, "we explicitly overruled the statement in *Perry* that a 'trial judge is required to grant a new trial only when he is satisfied the recantation of the witness is true.' " *Crosby*, ¶ 18 (quoting *Clark I*, ¶ 32). Instead of denying the motion based on whether or not the district court believed the recantation from a perspective of a fact-finder, we held that the district court was only to consider all five *Clark I* factors, including "whether a

13

new trial would have the *reasonable probability* of resulting in a different outcome." *Crosby*, ¶ 21.

¶30   In response to a concern raised by the dissenting opinion that the district court did properly consider the *Clark I* factors and that our reversal was improper, we went on to explain in practical terms the difference "between the district court properly assessing the 'weight and credibility' of the recanting testimony, which *Clark* commands, versus the district court determining the ultimate 'veracity' of the recanting testimony, which *Clark* prohibits." *Crosby*, ¶ 23.

> Under proper application of the *Clark* test, a possible scenario might be one in which the district judge finds the recanting witness highly credible, but nonetheless denies a new trial under the *Clark* test in light of the strength of the testimony of five other prosecution witnesses presented at the original trial. Alternatively, a judge might find a witness not particularly credible, but nonetheless grant a new trial under *Clark* because there is a reasonable probability—given the paucity of other evidence adduced at the first trial—that a jury on retrial would acquit the defendant when presented with the new evidence. In sum, the distinctions set forth in *Clark*, and reaffirmed here, are both appropriate and crucial to ensuring that the reviewing judge does not intrude on the jury's province as fact finder.

*Crosby*, ¶ 24.

¶31   In the case at bar, the District Court did not abuse its discretion in concluding there was not a reasonable probability that T.C.'s latest recantation would result in a different outcome. The District Court did not succumb to the error we cautioned against in *Crosby*, and base its decision on whether or not the recantation was true. Instead, it examined the entire context in which this recantation would be presented to the jury, in light of the testimony and evidence presented during the original trial. As explained

14

above (Opinion, ¶¶ 12-13), it correctly noted that the recantation was "unreliable and suspect," given the fact that T.C. was allegedly a victim of sexual abuse and had been encouraged to recant by authority figures. Additionally, T.C. was both emotionally and physically removed from her mother Christina, and advised that the separation would continue as long as she continued to make allegations against Clark. The District Court observed further that this was T.C.'s second recantation, and that though she initially recanted in the second interview with law enforcement, she did not actually give a factual recantation of events until after Clark testified at trial. Under these circumstances, the District Court was within its discretion to conclude that a new jury would simply not believe T.C.'s letter given her prior statements and the events leading up to the letter.

¶32 In considering whether newly-discovered evidence warrants a new trial, the role of the District Court is not to second-guess the jury. Under *Clark I*, a district court is simply to apply the factors under the circumstances and make findings in accordance therewith. The District Court did so appropriately here. The original jury in this case heard Clark's testimony and simply did not believe him. We agree with the District Court that there is not a "reasonable probability" that a consideration of T.C.'s letter would make Clark's testimony any more credible the second time around because the letter and T.C.'s testimony would still not explain why Clark reached out and touched T.C.'s breasts in the first place. Thus, the District Court did not abuse its discretion when it denied Clark's motion.

¶33 **Issue Two:** *Did the District Court abuse its discretion in requiring Clark to serve the mandatory minimum term of four years for the sexual assault conviction?*

¶34 Clark maintains the District Court abused its discretion in requiring him to serve the mandatory four-year minimum sentence for sexual assault upon re-sentencing. Clark's original sentence required him to complete Phase II counseling before becoming eligible for parole. Because Clark steadfastly maintained his innocence, the District Court agreed that requiring him to do so would violate his Fifth Amendment rights and removed that condition. But instead of releasing him to probation and reducing the term of his incarceration, the District Court re-imposed the twenty-year sentence and did not give Clark an exception to the mandatory minimum for sexual assault.

¶35 The dissents notwithstanding, the State did not seek to dismiss Clark's challenges to his sentence in District Court on the grounds that such challenges were outside the scope of remand. Instead, it acquiesced in the re-sentencing proceedings. Because the State failed to object in the District Court to Clark's re-sentencing motions as being outside the scope of our remand, the District Court proceeded to issue those rulings. This being so, Clark now has the right to appeal from his re-sentencing. Thus, we proceed to the merits of Clark's appeal.

¶36 At the time of re-sentencing, Clark had been in prison for approximately three years. Clark argues the District Court's action in requiring him to serve the mandatory minimum of four years for sexual assault was vindictive and made no sense because it required him to serve additional time in prison without receiving treatment. While Clark urges us to conclude that the District Court abused its discretion in sentencing him, we conclude rather that Clark's sentence was illegal.

16

¶37 Upon review of the record, it has come to the Court's attention that the District Court, the State, and Clark's counsel have all relied upon the wrong statute with respect to Clark's sentencing for the sexual assault conviction. "It is axiomatic that when deciding a case involving the commission of a crime or sentencing for a crime, we use the criminal statutes in effect at the time of the commission." *Dexter v. Shields*, 2004 MT 159, ¶ 13, 322 Mont. 6, ¶ 13, 92 P.3d 1208, ¶ 13 (citing *State v. Muhammad*, 2002 MT 47, ¶ 24, 309 Mont. 1, ¶ 24, 43 P.3d 318, ¶ 24).

¶38 Clark was charged by information on July 31, 2002, with violating § 45-5-502, MCA (2001). *Clark I*, ¶ 20. This statute reads in pertinent part as follows:

> **Sexual assault.** (1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.
> (2) A person convicted of sexual assault shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.
> (3) If the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual assault, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a *term of not less than 2 years* or more than 100 years and may be fined not more than $50,000.

Section 45-5-502(1) through (3), MCA (2001) (emphasis added).

¶39 Throughout Clark's sentencing, the State, Clark's counsel, and the District Court proceeded under the premise that the mandatory minimum for his offense was four years. That is patently incorrect. The four-year mandatory minimum for sexual assault was not added by the Legislature until 2003, well after the crime was committed. *See* § 45-5-502(3), MCA (2003). Accordingly, the mandatory minimum for Clark's conviction was *two years*, not four years, and by proceeding under the mistaken belief

17

that the mandatory minimum was four years, the District Court obviously sentenced Clark under a statute which was not in effect at the time the offense was committed.

¶40 Because the District Court was without statutory authority to impose a mandatory minimum of four years on Clark, such sentence constitutes an illegal sentence. *See State v. Burch*, 2008 MT 118, ¶ 12, 342 Mont. 499, ¶ 12, 182 P.3d 66, ¶ 12 (quotations omitted, alterations in original) ("Because a district court's authority to sentence a defendant is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority . . . [a] sentence not based on statutory authority is an illegal sentence.") Although Clark has already served four years in prison, we nonetheless vacate Clark's sentence and remand for re-sentencing on the grounds that it was an illegal sentence under the law in effect at the time Clark's crime was committed.

¶41 **Issue Three:** *Did the District Court abuse its discretion in imposing probation conditions on Clark's suspended sentence?*

¶42 The District Court imposed a total of thirty-three probation conditions upon Clark during the term of his suspended sentence. Because we vacate Clark's sentence and remand for re-sentencing, Clark will have the opportunity to challenge his probation conditions before the District Court. However, only those conditions which are objected to before the District Court may be later challenged on appeal. *Ashby*, ¶ 22.

## CONCLUSION

¶43    We affirm the District Court's denial of Clark's motion for a new trial.  However, we vacate Clark's sentence and remand for re-sentencing consistent with the specific considerations set forth in this Opinion.

/S/ PATRICIA COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice James C. Nelson, specially concurring.

¶44    I concur in the Court's Opinion except that I do not agree with our statement of the standard of review in ¶ 21 of the Opinion.  *See State v. Stiles*, 2008 MT 390, ¶¶ 19-50, ___ Mont. ___, ¶¶ 19-50, ___ P.3d ___, ¶¶ 19-50 (Nelson, J., dissenting).

¶45    As for the Dissent's concern about the State's acquiescence in the District Court's exceeding the scope of our remand (*see* Dissent, ¶¶ 63-67), I tend to agree with the Chief Justice's comments.  Indeed, I have made these same sorts of arguments in response to opinions of this Court holding that a defendant "acquiesced" in the trial court's exercise of authority it did not have by imposing an illegal sentence.  *See e.g. State v. Micklon*, 2003 MT 45, ¶¶ 13-22, 314 Mont. 291, ¶¶ 13-22, 65 P.3d 559, ¶¶ 13-22 (Nelson & Trieweiler, JJ., dissenting); *Micklon*, ¶ 23 (Leaphart, J., dissenting); *State v. Walker*, 2007 MT 205, ¶¶ 30-40, 338 Mont. 529, ¶¶ 30-40, 167 P.3d 879, ¶¶ 30-40 (Nelson & Warner, JJ., concurring in part and dissenting in part); *Walker*, ¶ 25 (Cotter, J., concurring); *see also State v. Garrymore*, 2006 MT 245, ¶¶ 94-101, 334 Mont. 1, ¶¶ 94-101, 145 P.3d

19

946, ¶¶ 94-101 (Nelson, J., specially concurring). Yet, time and time again, the Court has rejected these arguments, asserting that a trial court may exercise nonexistent authority if the defendant "affirmatively agrees to," "acquiesces" in, "actively participates" in, "bargains for," "desires," "wants," "requests," or is "willing" to serve an illegal sentence. *Micklon*, ¶ 10; *Walker*, ¶¶ 16-18. Accordingly, I cannot understand the rationale, suggested by the Dissent, that would allow a trial court to impose an illegal sentence if the defendant acquiesces in it, but would deny the trial court the power to undo an illegal sentence if the State acquiesces in the court's doing so. What we fail to recognize is that the mischief in both approaches is that it is not the statutes and our remand orders which define the trial court's authority; rather, it is a litigant's conduct—his "acquiescence"— which gives the court the authority to exercise power which it otherwise would not have.[1] While this approach might be characterized as nonsensical, it is what our jurisprudence permits.

---

[1] Justice Morris made essentially this same observation for the Court in *Davis v. State*, 2008 MT 226, 344 Mont. 300, 187 P.3d 654, when he stated:

> The State, by urging this Court to construe the time prescription set forth in § 46-21-102, MCA, as a limit on district courts' subject matter jurisdiction, asserts that a petitioner may dictate a court's subject matter jurisdiction on the timeliness of his petition. The Supreme Court has described subject matter jurisdiction, however, as authority that "cannot be expanded to account for the parties' litigation conduct . . . ." The State fails to identify a provision in either the Montana Constitution or the Montana Code that allows this Court to hinge a district court's "power" to entertain a post-conviction petition on the timeliness of the petition.

*Davis*, ¶ 21 (ellipsis in *Davis*, citation omitted).

20

¶46    Finally, I previously raised the same sorts of concerns about trial courts violating remand orders as are now, again, being raised by the Dissent. *See In re Marriage of Bartsch*, 2007 MT 136, ¶¶ 36-48, 337 Mont. 386, ¶¶ 36-48, 162 P.3d 72, ¶¶ 36-48 (Nelson, J., Gray, C.J., & Rice, J., dissenting). In *Bartsch*, we remanded to the trial court, directing that court to make specific findings of fact on three issues. The trial court, however, failed to make the *specific* findings required. *See Bartsch*, ¶¶ 37, 40-46. Yet, we affirmed the trial court's remand decision. *Bartsch*, ¶ 30. We determined that the trial court's nonspecific findings of fact were "sufficiently clear" for purposes of appellate review. *Bartsch*, ¶ 18.

¶47    The Court here is simply being consistent in following the *Micklon* line of cases and *Bartsch*. Although these are precedents with which I strenuously disagree, I am constrained to follow both. And that will continue to be the case until we overrule the *Micklon* line of cases and cease glossing over trial courts' failure to comply with remand orders as we did in *Bartsch*. It would seem that, as to this case, unfortunately, "What goes around, comes around."

¶48    With these caveats, I otherwise concur in the Court's Opinion.

/S/ JAMES C. NELSON

Justice Jim Rice, concurring in part and dissenting in part.

¶49    I concur with the Court's resolution of Issue 1 but believe the Court has erred by allowing the District Court to reopen and reconsider Clark's sentence after remand.

¶50 The State argues that the sentencing issues Clark raised on remand, and now before us in the present appeal, are not properly before this Court because Clark did not raise them in his first appeal. According to the State, the limited purpose of our remand was for the District Court to reconsider Clark's motion for a new trial in light of our holding in *Clark I*. Thus, the State argues, Clark was not entitled to challenge the originally imposed sentence because we did not send that issue back to the District Court for review.

¶51 Clark argues, and this Court briefly observes (Opinion, ¶ 36), that the State acquiesced to the District Court's reopening of Clark's sentence, and therefore the State waived its objection. According to Clark, his original sentence was also reviewable on remand, without ever formally appealing it, simply because it was "illegal." I would adopt the State's arguments and re-impose the District Court's original sentence, as I do not believe a waiver occurred here.

¶52 The law of the case doctrine provides that "in deciding a case on appeal, when the Supreme Court states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent proceedings, both in the trial court and upon subsequent appeal." *Haines Pipeline Constr.*, 265 Mont. at 289, 876 P.2d at 637 (citing *Zavarelli*, 239 Mont. at 124, 779 P.2d at 492); *see also Sanders v. State*, 1998 MT 62, ¶ 12, 288 Mont. 143, ¶ 12, 955 P.2d 1356, ¶ 12. While the trial court may generally consider any matters left open by the appellate court when a case is remanded for further proceedings, *Zavarelli*, 239 Mont. at 125-26, 779 P.2d at 493, that rule does not apply when the case is remanded with

22

specific, limited instructions, even if the Court employs its oft-used "further proceedings" language. A closer look at *Haines Pipeline Constr.* and *Zavarelli* demonstrates the difference between a case remanded for a new trial and a case remanded with limiting instructions.

¶53 In *Haines Pipeline Constr.*, we had previously affirmed the District Court's findings and conclusions in all respects except as to compensatory and punitive damages, remanding for the "singular purpose" of allowing "the parties to plead, prove, argue and defend against" a change in the law which had occurred between the litigation and the appeal and which had rendered the then-existing record insufficient to support the district court's punitive damages award. *Haines Pipeline Constr.*, 265 Mont. at 291, 876 P.2d at 638. Despite our limited remand, however, the District Court retried the case de novo, ultimately making findings and conclusions "directly contrary to the findings of fact and conclusions of law in *Haines I*, which were affirmed by this Court." *Haines Pipeline Constr.*, 265 Mont. at 287, 876 P.2d at 636. We observed that the trial court is free to conduct further proceedings "*not inconsistent with the decision of the appellate court*, as to any question *not presented or settled* by such decision." *Haines Pipeline Constr.*, 265 Mont. at 290, 876 P.2d at 637 (second emphasis added); *see also Story v. City of Bozeman*, 259 Mont. 207, 230-31, 856 P.2d 202, 216 (1993) ("A judgment of the supreme court ordering a new trial opens anew all questions in the case.") However, by conducting a trial de novo, the district court in *Haines Pipeline* exceeded the scope of remand and entertained an issue which had not been reopened.

¶54  In contrast, in *Zavarelli* we had previously remanded the case to the District Court after concluding it had erred by finding a prescriptive easement on certain property. *See Zavarelli v. Might*, 230 Mont. 288, 292-93, 749 P.2d 524, 527 (1988).  We stated: "Since the prescriptive easement cannot be supported, *the judgment must be reversed.  We remand for such further proceedings as are necessary in the light of this opinion and the facts found by the District Court.*" *Zavarelli*, 230 Mont. at 292-93, 749 P.2d at 527 (emphasis added).  Thus, the District Court's subsequent conclusion "that the descriptions in the mutual deeds were the result of a mutual mistake" was not inconsistent with our holding that no prescriptive easement existed, and was not precluded by the law of the case.  *Zavarelli*, 239 Mont. at 126, 779 P.2d at 493.  Upon reaching this Court once again after remand, we observed that when the case returned to the District Court, it had "the posture of not having a final judgment.  In that situation, *when there is nothing in the terms of the mandate to prevent it*, the trial court has the power, on reconsideration, to find the same facts and change its holding, or to find different facts consistent with its original holding."  *Zavarelli*, 239 Mont. at 126, 779 P.2d at 493 (emphasis added).  In other words, we had "left open" any question other than whether a prescriptive easement existed.  The District Court was free to conclude that a mutual mistake had been made because its previous judgment had been reversed *in its entirety*.

¶55  The present case is similar to *Haines Pipeline Constr.* and distinguishable from *Zavarelli*.  We did not "leave open" the judgment of the District Court as we had done in *Zavarelli* by reversing it in its entirety.  Instead, similar to our holding in *Haines Pipeline*

24

*Constr.*, we expressly *affirmed* the District Court's judgment of conviction—which included Clark's sentence—and reversed *only* the District Court's denial of Clark's motion for a new trial. *Clark*, ¶ 43. We then remanded for the sole purpose of reconsidering Clark's motion for retrial. In other words, ours was not a wholesale reversal of the District Court's judgment, but was a limited reversal and remand. As such, the District Court did not have jurisdiction to reconsider its entire judgment or sentence, because that issue had been settled by this Court and had become the law of the case, which demanded that Clark's conviction and sentence stand as rendered by the District Court and affirmed on Clark's first appeal. Just as we did in *Haines Pipeline Constr.*, we remanded for a "singular purpose," and the District Court exceeded the scope of that remand by reconsidering Clark's sentence. *See also State v. O'Shea*, 634 N.W.2d 150, 158 (Iowa Ct. App. 2001) (remand to the District Court was for the sole purpose of applying the correct legal standard to defendant's new trial motion and did not extend to a reconsideration of his motion for judgment of acquittal).

¶56    Accordingly, I would not reach the merits of Issues 2 and 3 and would reverse the District Court's re-sentencing of Clark for lack of jurisdiction.

/S/ JIM RICE


Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶57    I concur in the Court's opinion on issue one, which affirms the District Court's denial of Clark's motion for a new trial. I dissent from the Court's decision to address

25

and resolve the second issue. I would address the scope of remand question *sua sponte* and conclude that the District Court exceeded the scope of our remand—and, therefore, its power—by entertaining and resolving the sentencing matter as part of the proceeding on remand. As a result, I would hold the second issue is not properly before us. In that regard, I join Justice Rice's dissent and his analysis of *Zavarelli* and *Haines*. I write separately to address the scope of remand issue in more detail.

¶58 Section 3-2-204, MCA, provides that this Court may affirm, reverse or modify any judgment or order from which an appeal is taken or direct "further proceedings to be had." The statute, of course, merely restates our constitutional appellate authority. *See* Mont. Const. art. VII, § 2(1).

¶59 Two issues were raised in *Clark I*: an assertion of instructional error and an assertion of error in the denial of defendant's motion for a new trial. We ultimately affirmed the judgment of conviction. *Clark I*, ¶¶ 3, 4 and 43. We also clarified one aspect of the law relating to motions for new trial, but we could not determine whether or not the trial court had correctly applied the law in denying the motion for new trial. *Clark I,* ¶¶ 34-42. Consequently, we reversed that order and remanded "for the District Court to undertake anew Clark's motion for new trial." *Clark I,* ¶ 42. In summarizing the outcome, we stated we were remanding for "further proceedings consistent with this opinion." *Clark I*, ¶ 43. Obviously, the further consistent proceedings could only include the previously—and expressly—stated reconsideration of the motion for new trial.

¶60 On remand, nearly two months after the District Court denied his motion for new trial and nearly two and one-half years after the Judgment and Commitment in his case,

26

defendant moved to *amend* the *judgment*. He asserted that there was an abuse of discretion in the sentence originally imposed. The District Court entertained the issue, and resolved it in the State's favor. In my view, given the carefully limited power we returned to the District Court on remand, that court did not have the power or authority to consider the sentencing issue at all.

¶61 This is not a new concept in Montana law. Our cases have long held that, on remand after appeal, the trial court's duty is to comply with the mandate of this Court and to obey the directions therein; the trial court commits error if it fails to follow those directions. *See e.g. State ex rel. Olson v. District Court*, 184 Mont. 346, 349, 602 P.2d 1002, 1004 (1979) (citations omitted). Indeed, this conclusion is "both logical and clearly expressed [in Montana statute]." *See In re Marriage of Sarsfield*, 215 Mont. 123, 125, 495 P.2d 473, 474 (1985). We also have held that a trial court cannot ignore an appellate court's mandate in disposing of a case on remand; doing so constitutes error. *Marriage of Sarsfield*, 215 Mont. at 125, 495 P.2d at 474. Finally, and more recently, we repeated that on remand, the trial court may "make any order not inconsistent with the decision of the appellate court." *Brown v. State*, 2002 MT 58, ¶ 15 309 Mont. 106, ¶ 15, 46 P.3d 42, ¶ 15 (citation omitted).

¶62 Here, we remanded for reconsideration of the motion for new trial in light of our clarification in *Clark I*—no less and no more. That remand, in my view, put mandatory constraints on the trial court's power and authority to act on remand. The District Court in the present case did follow our directive regarding the motion for new trial, and I join the Court in affirming that decision in issue one. Long after the District Court had met its

27

obligation on remand, Clark moved to amend the years' old Judgment and Commitment. The District Court's action in entertaining and resolving that motion constituted error in that the court exceeded the scope of our remand. In my view, a trial court which does more than it was empowered to do on remand ignores our directives and is inconsistent with our instructions every bit as much as a trial court which does less or which otherwise acts differently from our remand instructions.

¶63 The Court concludes that this matter of whether the District Court exceeded the scope of our remand cannot be addressed here because the State did not object on remand and, indeed, "acquiesced." It is my view that a party cannot vest or divest a court of the power or authority to entertain and resolve an issue. Indeed, this is particularly true where that court is already constrained by this Court's remand.

¶64 Some may argue that we do not always provide precise instructions on remand, and that may be so. It was not, however, the case in *Clark I*, as the Court admits in ¶ 10. Some also might contend that the scope of remand is neither an important question nor one which this Court should notice *sua sponte*. I would strongly disagree. Leaving the determination of a trial court's authority to act on remand to a party to raise seems simply injudicious. I believe this Court must be much more watchful than that of its authority, and of the power and authority of trial courts. Furthermore, such an approach would leave the timely finality of cases to counsel's watchful eye. Given our longstanding jurisprudence about the importance of the finality of cases, this strikes me as most unwise. *See e.g. Tipp v. Skjelset*, 1998 MT 263, ¶ 28, 291 Mont. 288, ¶ 28, 967 P.2d 787, ¶ 28 (citation omitted).

¶65 Finally, I recognize that some might be concerned about being able to review and correct a purportedly illegal sentence. I would respond that there are a variety of statutory methods of challenging allegedly illegal sentences, including—but not necessarily limited to—direct appeal and postconviction relief (via a claim of ineffective assistance of counsel). In addition, habeas corpus relief is available to an incarcerated person wishing to challenge the legality of the duration of confinement. *See Brown*, ¶ 21.

¶66 Importantly, a motion to amend a 2½-year-old judgment is not a cognizable means of challenging an allegedly illegal sentence. Here, Clark does not assert that his original sentence was illegal or, indeed, that the sentence he now is being allowed to appeal is illegal. He merely asserts that the sentencing court abused its discretion in resentencing him. In that regard, if the challenge is to a sentence asserted to be objectionable, but not illegal, I cannot imagine the basis on which either the trial court or this Court could consider it at this very late date. *See State v. Hameline*, 2008 MT 241, ¶ 12, 344 Mont. 461, ¶ 12, 188 P.3d 1052, ¶ 12; *State v. Kirkland*, 2008 MT 107, ¶ 8, 342 Mont. 365, ¶ 8, 181 P.3d 616, ¶ 8 (citation omitted). To avoid this additional problem, the Court simply concludes the sentence is illegal, and constructs a new analysis never advanced by Clark.

¶67 For me, the bottom line is that we should not stray into allowing trial courts on remand to exercise power they simply do not have. Therefore, I join the Court's opinion on issue one, but strenuously dissent from the Court's opinion on issue two. I would hold that the District Court exceeded its authority on remand in considering the sentencing claim and that Clark has readily available options to challenge the sentence in the event he or his seasoned counsel believe it is illegal.

/S/ KARLA M. GRAY